IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Z STREET, | : |
| Plaintiff, | : |
| v. | : |
| DOUGLAS H. SHULMAN, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF INTERNAL REVENUE, | : |
| Defendant. | : |

## COMPLAINT

COMES NOW the Plaintiff, Z STREET, a pro-Israel Pennsylvania nonprofit organization, by its undersigned counsel, and alleges as follows:

## INTRODUCTION

The plaintiff in this case, Z STREET, is a nonprofit organization devoted to educating the public about the facts relating to the Middle East, and that relate to the existence of Israel as a Jewish State, and Israel's right to refuse to negotiate with, make concessions to, or appease terrorists. The case is brought because, through its corporate counsel, Z STREET was informed explicitly by an IRS Agent on July 19, 2010, that approval of Z STREET's application for tax-exempt status has been at least delayed, and may be denied because of a special IRS policy in place regarding organizations in any way connected with Israel, and further that the applications of many such Israel-related organizations have been assigned to "a special unit in the D.C. office to determine whether the organization's activities contradict the Administration's public policies." These statements by an IRS official that the IRS maintains special policies (hereinafter the

"Israel Special Policy") governing applications for tax-exempt status by organizations which deal with Israel, and which requires particularly intense scrutiny of such applications and an enhanced risk of denial if made by organizations which espouse or support positions inconsistent with the Obama administration's Israel policies, constitute an explicit admission of the crudest form of viewpoint discrimination, and one which is both totally un-American and flatly unconstitutional under the First Amendment.

Z STREET brings this case seeking a Declaratory Judgment that the Israel Special Policy violates the First Amendment to the United States Constitution; and for injunctive relief barring application of the Israel Special Policy to Z STREET's application for tax-exempt status or to similar applications by any other organization; and to compel full public disclosure regarding the origin, development, approval, substance and application of the Israel Special Policy.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Action by operation of 28 U.S.C. §1331 (federal question) and 28 U.S.C. §2201.

2. Venue lies in this District by operation of 28 U.S.C. 1391(e) inasmuch as a substantial part of the events or omissions giving rise to the claim occurred here, and inasmuch as the Plaintiff resides here.

## FACTS

3. Z STREET filed in the Commonwealth of Pennsylvania for incorporation as a non-profit on November 24, 2009.

4. On December 29, 2009, Z STREET applied to the United States Internal Revenue Service for status as an organization recognized under Section 501(c)(3) of the Internal

Revenue Code ("the Code"), which status (also known as "tax-exempt" status) would allow those persons donating money to Z STREET to deduct such donations from their taxable income, thereby diminishing the net after-tax cost of such donations to their donors, and so increasing the amount and number of such donations. Defendant the Commissioner of Internal Revenue is charged by Section 501(c)(3) of the Code to grant tax-exempt status to those organizations that exclusively engage in charitable and educational activities.

5. Section 501(c)(3) of the Code provides for the exemption from Federal income tax of organizations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual. Section 1.501(c)(3)-1(d)(2) of the Treasury Regulations (the "Regulations") provides that the term "charitable" is used in Section 501(c)(3) of the Code in its generally accepted legal sense.

6. Z STREET was incorporated exclusively for charitable and educational purposes. In addition, its Articles of Incorporation specifically provide that, "No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its directors, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of its exempt purposes."

7. Z STREET's website, public awareness campaigns, and all other activities are educational. Z STREET's website and other educational materials provide a full and fair

exposition of the pertinent facts to permit an individual or the public to form an independent opinion or conclusion.

8. Z STREET's positions are supported by research, original documents, facts, and opinions from recognized academic and other knowledgeable sources, which sources are provided in its materials and on its website, and therefore, Z STREET's activities are educational and charitable in nature.

9. Z STREET is therefore explicitly organized for charitable and educational purposes within the meaning of Section 501(c)(3) of the Code.

10. Regulation Section 1.501(c)(3)-1(d)(2) provides that the term "charitable" includes "advancement of education," and Section 1.501(c)(3)-1(d)(3)(i) of the Regulations defines "education" as: (a) the instruction or training of the individual for the purpose of improving or developing his capabilities; or (b) the instruction of the public on subjects useful to the individual and beneficial to the community. The second example of Section 1.501(c)(3)-1(d)(3)(i) of the Regulations refers to organizations whose activities consist of presenting public discussion groups, forums, panels, lectures, or other similar programs as being educational.

11. An organization engaged in the advocacy of controversial viewpoints or positions with the intent of molding public opinion or creating public sentiment does not preclude such organization from qualifying for tax-exemption under Section 501(c)(3) of the Code, so long as the organization presents a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. Treas. Reg. 1.501(c)(3)-1(d)(2); Revenue Procedure 86-43, 1986-2 CB 729.

12. In Revenue Procedure 86-43, 1986-2 C.B. 729, the IRS established a methodology test to determine whether an organization's advocacy activities are educational. Although the IRS will render no judgment as to the organization's advocacy position, the IRS will look to the method used by the organization to develop and present its views. *Id.* The method is not educational if it fails to provide: (a) a factual foundation for the viewpoint being advocated; or (b) a developed presentation of the relevant facts that would materially aid a listener or reader in a learning process. In addition, the presence of any of the following factors in the presentations made by the organization is indicative that the method used by the organization to advocate its viewpoints is not educational:

> 1. The presentation of viewpoints unsupported by facts is a significant portion of the organization's communications;
>
> 2. The facts that purport to support the viewpoints are distorted;
>
> 3. The organization's presentations make substantial use of inflammatory and disparaging terms and express conclusions more on the basis of strong emotional feelings than of objective evaluations; or
>
> 4. The approach used in the organization's presentations is not aimed at developing an understanding by the intended audience or readership because it does not consider their background or training in the subject matter.

Moreover, IRS policy stipulates that there may be exceptional circumstances where an organization's advocacy may be educational even if one or more of the listed factors are present. PLR 199907021. In such case, the IRS will look to all

the facts and circumstances to determine whether an organization may be considered educational despite the presence of one or more of such factors.

13. In Private Letter Ruling 199907021, the IRS ruled that an organization which published newsletters to its members, produced a series of daily radio commentaries, and engaged in other educational activities about national and foreign policy issues was a charitable organization. The IRS concluded that the organization's activities were educational because the organization (1) included the opposition's position; (2) supported its position with facts; and (3) cited independent sources that support the facts contained in the articles.

14. In a letter dated May 15, 2010, IRS Agent Diane Gentry, to whom the Z STREET file had been assigned, sent an IRS Letter 2382 requesting additional information to aid her in her review of Z STREET's IRS Form 1023 (the "Application"). Z STREET, by its corporate counsel, submitted a response on June 17, 2010, providing all of the requested information, most of which had already been provided in Z STREET's initial application, including information about each of Z STREET's board members. In fact, detailed personal information about each Z STREET board member had to be supplied to the IRS three times, a number in excess of the experiences of Z STREET board members for any other board on which they sit.

15. In an effort to learn the status of the application, and the reason for the delay in issuance of the requested 501(c)(3) certification, Z STREET's corporate counsel made follow up calls to IRS Agent Gentry of the IRS on July 7, and 14, 2010, which went unanswered. Counsel left a message in each instance, which was not returned.

16. On July 19, 2010, Z STREET's corporate counsel called again, and this time spoke with IRS Agent Gentry who advised Z STREET's counsel that she had two concerns regarding the Application: (1) the advocacy activities in general, and (2) the IRS's special concern about applications from organizations whose activities are related to Israel, and that are organizations whose positions contradict the US Administration's Israeli policy.

17. Furthermore Agent Gentry advised Z Street's counsel that she questioned whether Z STREET's activities were educational as described under Section 501(c)(3) of the Code, but instead might be lobbying, or that Z STREET might be an "action organization," which is the case when the only way to accomplish the purpose of the organization is through legislation. In fact, none of Z STREET's purposes can be accomplished through legislative action.

18. IRS Agent Gentry also informed Z STREET's counsel that the IRS will look to the method used by the organization to develop and present its views. She stated further that the method is not educational if it fails to provide: (a) a factual foundation for the viewpoint being advocated; or (b) a developed presentation of the relevant facts that would materially aid a listener or reader in a learning process.

19. To the extent that this concern is actually animating the IRS's response to Z STREET's application for 501(c)(3) status, it is baseless. Z STREET's application provides eminent, factual, proof that the organization's website, public awareness campaigns, and other activities are educational ones conducted in conjunction with advocacy. The application makes clear and all the evidence supports that Z STREET does and will provide a full and fair exposition of the pertinent facts as to permit an individual or the public to form

an independent opinion or conclusion, and that Z STREET's positions are and will be supported by research, original documents, facts, and opinions from recognized academic and other knowledgeable sources.

20. Further, in addition to its application for 501(c)(3) status, Z STREET also applied for 501(h) status, which allows a tax-exempt organization to engage in lobbying, to the extent any is engaged in, by measuring the amount of money the organization spends on lobbying, and for an organization the size of Z STREET, that amount is 20% of the exempt purpose expenditures. Z STREET has not engaged in any lobbying activities no matter how defined, but had it done so, less than 20% of its total expenditures were spent on lobbying.

21. Agent Gentry also informed Z STREET's counsel that the IRS is carefully scrutinizing organizations that are in any way connected with Israel.

22. Agent Gentry further stated to counsel for Z STREET: "these cases are being sent to a special unit in the D.C. office to determine whether the organization's activities contradict the Administration's public policies."

23. Z STREET, and its President, Lori Lowenthal Marcus, have publicly taken positions on issues relating to Israel that are inconsistent with positions taken by the Obama administration.

24. The IRS's admissions by Agent Gentry make clear that the IRS maintains an Israel Special Policy governing the processing of applications for tax exemption by organizations which are believed to be operated by persons holding political views inconsistent with those espoused by the Obama administration, and that the Israel Special

Policy mandates that such applications be scrutinized differently and at greater length, and therefore that they take longer to process than those made by organizations without that characteristic, or even that the tax-exempt application might be denied altogether on that basis.

25. Z STREET has been and continues to be injured in its business and property by the Israel Special Policy inasmuch as its application for tax-exempt status has been affected by the application of a clearly unconstitutional policy which has held up the granting of its 501(c)(3) status, as admitted by the IRS agent in charge of reviewing and determining Z STREET's application. This delay has impaired and continues to impair Z STREET's ability to raise funds and has thereby restricted the scope of its operation and its ability to speak and to educate the public regarding the issues that are the focus and purpose of Z STREET.

26. As of the date of the filing of this Complaint, Z STREET's application for tax-exempt status has not been approved.

27. Organizations engaged in the same degree of political advocacy but which take positions more closely aligned with the Obama administration's views and policies regarding Israel have been granted tax-exempt status and, on information and belief, such applications have been granted more quickly than Z STREET's application and without the same delays or intensity of review.

## COUNT I

Pursuant to the Declaratory Judgment Act,

28 U.S.C. §2201, and the First Amendment

To the United States Constitution

28. Plaintiff repeats and re-alleges paragraphs 1 through 27 as if fully set forth herein.

29. Limitation of the issuance of tax-exempt status to a nonprofit educational organization on the basis of the substantive views held by the persons who operate the organization constitutes a restriction on the freedom of speech of such persons.

30. The existence and application of the Israel Special Policy identified above constitutes blatant viewpoint discrimination in violation of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff seeks a Declaration that Defendant's substance and application of the Israel Special Policy to any application for tax-exempt status constitutes discrimination among viewpoints and a violation of the Plaintiff's right to freedom of speech as guaranteed by the First Amendment to the United States Constitution.

Plaintiff further seeks injunctive relief:

A. Barring application of the Special Policy to its pending application for tax-exempt status pursuant to §501(c)(3) of the Code;

B. Requiring that Defendant adjudicate Plaintiff's application for tax-exempt status expeditiously and fairly and without any consideration of whether the positions

espoused by the Plaintiff or its officers are or are not consistent or inconsistent with the policy positions taken by the Obama administration;

C. Mandating complete disclosure to the public regarding the origin, development, approval, substance and application of the Special Policy.

D. Award to Plaintiff of its attorney's fees and costs pursuant to 28 U.S.C. §2412; and

E. Such other and further relief as the Court may deem proper.

Jerome M. Marcus
Attorney I.D. 50708
P. O. Box 182
Merion Station, PA  19066
Voice: 610 664 1184
Email: contact@ZSTREET.ORG