# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Z STREET, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 12-cv-0401 (KBJ) |
| | ) |
| JOHN KOSKINEN, | ) |
| IN HIS OFFICIAL CAPACITY | ) |
| AS COMMISIONER OF | ) |
| INTERNAL REVENUE, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Z Street ("Plaintiff" or "Z Street") is a non-profit corporation in Pennsylvania that is dedicated to educating the public about various issues related to Israel and the Middle East.  Z Street originally filed this lawsuit in the Eastern District of Pennsylvania in December of 2010, naming the Commissioner of the Internal Revenue Service, in his official capacity, as the defendant.[1]  The complaint alleges that the Internal Revenue Service ("IRS" or "Defendant") violated the First Amendment when it implemented an internal review policy that subjected Israel-related organizations that are applying for tax-exempt status under Section 501(c)(3) of Title 26 of the U.S. Code to more rigorous review procedures than other organizations applying for that same status.  Plaintiff maintains that this so-called "Israel Special

---

[1] This case was initially brought against Douglas H. Shulman, who was Commissioner of Internal Revenue at the time the complaint was filed.  John Koskinen has been substituted pursuant to Federal Rule of Civil Procedure 25(d).

Policy" represents impermissible viewpoint discrimination on the part of the federal government, and has requested declaratory and injunctive relief.[2]

Before this Court at present is Defendant's motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  With respect to Plaintiff's contention that this case raises a federal question and is thus subject to this Court's jurisdiction under 28 U.S.C. § 1331, Defendant presses three arguments that the Court nevertheless lacks subject-matter jurisdiction over Plaintiff's constitutional claim.  Defendant maintains, first, that the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421 (2013), precludes this Court from exercising jurisdiction; second, that the Court cannot grant the relief that Plaintiff requests under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 (2013); and third, that the doctrine of sovereign immunity bars Plaintiff's suit.  Defendant further argues that Plaintiff has failed to state a claim upon which relief can be granted because Plaintiff has an adequate remedy at law, thereby foreclosing the equitable relief that Plaintiff seeks.  Because this Court does not accept Defendant's core contention that Z Street seeks a determination of whether or not it is entitled to Section 501(c)(3) tax status through this action—which underpins each of Defendant's grounds for dismissal—the Court rejects Defendant's assertions that the AIA, the DJA, or sovereign immunity bars Plaintiff's request for equitable relief and that Plaintiff has an adequate remedy at law.  Accordingly, Plaintiff is correct that it is permitted to press its constitutional claim in federal court, and Defendant's motion to dismiss the complaint must be **DENIED**.  A separate order consistent with this opinion will follow.

---

[2] Plaintiff also seeks recovery of all of the attorney's fees that it has incurred in pursuing this action.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The allegations in Z Street's complaint have roots that stretch back to the organization's founding in late 2009.  According to the complaint, Z Street was incorporated as a Pennsylvania non-profit corporation on November 24, 2009, for the purpose of "educating the public about Zionism; about the facts relating to the Middle East and to the existence of Israel as a Jewish State; and about Israel's right to refuse to negotiate with, make concessions to, or appease terrorists."  (Amended Complaint ("Am. Compl."), ECF No. 10, ¶¶ A, 3.)  Approximately one month after its formation, on December 29, 2009, Z Street filed an application with the IRS, seeking to be recognized as an organization that qualified for tax-exempt status under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3) (2013).  (*Id.* ¶ 4.)[3]

On May 15, 2010, IRS Agent Diane Gentry, who was handling Z Street's Section 501(c)(3) application, sent a letter to Z Street requesting additional information to aid her review.  (Am. Compl. ¶ 16.)  The amended complaint does not specify what particular information Agent Gentry requested, but it does allege that Z Street's counsel provided additional information to the IRS on June 17, 2010.  (*Id.*)  Z Street's counsel then attempted to follow up with Agent Gentry on several occasions to find out about the status of the organization's Section 501(c)(3) application, and was finally able to

---

[3] Section 501(c)(3) provides a federal tax exemption for certain organizations.  In relevant part, the statute applies to entities

> organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual, [and] no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation[.]

26 U.S.C. § 501(c)(3).

reach her by phone on July 19, 2010.  (*Id.* ¶¶ 17-18.)  The complaint alleges that during

that conversation, Agent Gentry told Z Street's counsel that she had two major concerns

about approving the application:  first, that the organization engaged in "advocacy"

activities that are not permitted under Section 501(c)(3); and second, that the IRS had

special concerns about applications from organizations whose activities relate to Israel,

and whose positions with respect to Israel contradict the current policies of the U.S.

Government.  (*Id.* ¶ 18.)  According to the complaint, Agent Gentry told Z Street's

counsel that the IRS carefully scrutinizes all Section 501(c)(3) applications that are

connected with Israel, and that "these cases are being sent to a special unit in the D.C.

office to determine whether the organization's activities contradict the Administration's

public policies."  (*Id.* ¶¶ 24-25.)

On August 25, 2010, just over one month after the telephone conversation

between Z Street's counsel and Agent Gentry, Z Street filed an initial complaint in the

Eastern District of Pennsylvania; it filed an amended complaint in that court on

December 17, 2010.  (*See* ECF Nos. 1, 10.)  Based upon Agent Gentry's statements to Z

Street's counsel, the amended complaint alleges that the IRS maintains an "Israel

Special Policy" with respect to the Section 501(c)(3) applications of organizations

whose stance on Israel differs from that of the Obama administration, and that such

applications are subject to additional review procedures not otherwise applicable.  (Am.

Compl. ¶ B.)  Z Street's sole claim in this action is that the so-called Israel Special

Policy constitutes viewpoint discrimination in violation of the First Amendment, (*id.* ¶¶

42-44) and Z Street requests both a declaration that this policy is unconstitutional, and

an injunction that orders the IRS to disclose information about the policy and that also

bars the agency from employing the policy when it "expeditiously and fairly" adjudicates Plaintiff's Section 501(c)(3) application.  (*Id.* at 16.)

Defendant filed a motion to dismiss the amended complaint on August 8, 2011 (ECF No. 19)—the motion that is the subject of this Opinion.  However, after Defendant's motion was fully briefed, the presiding judge in the Eastern District of Pennsylvania *sua sponte* ordered the case transferred to this Court.  (*See* Transfer Order of February 13, 2012, ECF No. 28.)  The Transfer Order stated that Z Street's case "is best construed as a controversy arising under 26 U.S.C. § 7428, which provides for declaratory judgments in suits related to the classification of organizations under Section 501(c)(3)."  (*Id.*)  The Transfer Order also noted that only three courts have jurisdiction over suits arising under Section 7428:  the United States Tax Court, the United States Court of Federal Claims, or the United States District Court for the District of Columbia.  (*Id.* at n. 2); *see also* 26 U.S.C. § 7428 ("[U]pon the filing of an appropriate pleading, the United States Tax Court, the United States Court of Federal Claims, or the district court of the United States for the District of Columbia may make a declaration with respect to" an organization's classification under Section 501(c)(3)).  However, the Transfer Order was also careful to observe that "[t]he Court shares Plaintiff's view that this is a case about constitutionally valid process, and finds that 26 U.S.C. § 7428 is the statute which establishes Plaintiff's right to challenge the IRS's 503(c) [sic] classification process."  (Transfer Order at 1.)

The case was transferred to the United States District Court for the District of Columbia on March 15, 2012.  (ECF No. 29.)  On April 20, 2012, the Court ordered the parties to supplement their existing briefing with legal authority from the D.C. Circuit.

(*See* Minute Order of April 20, 2012.)  On April 5, 2013, the case was reassigned to the undersigned, who subsequently ordered additional briefing on the question of whether the parties themselves viewed this action as one arising under Section 7428, and if so, whether that interpretation had any effect on the pending motion to dismiss.  (*See* Minute Order of May 13, 2013.)  This Court held a hearing on Defendant's motion to dismiss and the supplemental briefing on July 19, 2013, and subsequently took the matter under advisement.

## II.   LEGAL LANDSCAPE

### A. Standards For A 12(b)(1) Or 12(b)(6) Motion To Dismiss

#### 1.  Lack Of Subject-Matter Jurisdiction Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction.  *See Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.")  The law presumes that "a cause lies outside [the Court's] limited jurisdiction" unless the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  When a defendant files a motion to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)

(quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir 2005)). Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

Finally, when the court considers a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### 2. Failure To State A Claim Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Browning*, 292 F.3d at 242. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely[,]" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 555–56 (internal quotation marks and citation omitted).

Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic

recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555). If the facts as alleged, which must be taken as true, fail to

establish that a plaintiff has stated a claim upon which relief can be granted, the Rule

12(b)(6) motion must be granted. *See, e.g.*, *Am. Chemistry Council, Inc. v. U.S. Dep't

of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013). Finally, unlike in a

motion under Rule 12(b)(1), in deciding a 12(b)(6) motion, a court may "consider only

the facts alleged in the complaint, any documents either attached to or incorporated in

the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St.

Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### B. The Anti-Injunction Act And The Declaratory Judgment Act Tax Exception

As explained in more detail below, because Z Street seeks a declaratory

judgment against the federal agency that is responsible for the assessment and

collection of federal taxes, its complaint requires an evaluation of the pertinence of

certain statutory jurisdictional bars designed to prevent lawsuits that would otherwise

interfere with the IRS's revenue collection functions. Specifically, Defendant argues

that both the AIA and the so-called "tax exception" of the DJA bar Plaintiff's claim.

The AIA was first enacted in 1867, and states in relevant part that "no suit for

the purpose of restraining the assessment or collection of any tax shall be maintained in

any court by any person, whether or not such person is the person against whom such

tax was assessed." 26 U.S.C. § 7421(a). The Supreme Court has noted that the AIA

"apparently has no legislative history," but that "its language could scarcely be more

explicit." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974).  In short:

> [t]he manifest purpose of [the AIA] is to permit the United
> States to assess and collect taxes alleged to be due without
> judicial intervention, and to require that the legal right to the
> disputed sums be determined in a suit for refund.  In this
> manner the United States is assured of prompt collection of
> its lawful revenue.

*Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962); *see also Nat'l*

*Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2582 (2012) (The AIA "protects the

Government's ability to collect a consistent stream of revenue, by barring litigation to

enjoin or otherwise obstruct the collection of taxes.").  Thus, the AIA's clear purpose is

to limit lawsuits that have been brought to restrain or otherwise interfere with the

federal government's "assessment and collection" of taxes.

The DJA, by contrast, is not specifically aimed at curbing tax-related litigation.

Generally speaking, the DJA merely provides a mechanism by which federal courts

"may declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

There is, however, one major limitation on the reach of the DJA:  it applies to "case[s]

of actual controversy within [a federal court's] jurisdiction, *except with respect to*

*Federal taxes other than actions brought under [S]ection 7428 of the Internal Revenue*

*Code*[.]"  *Id.* (emphasis added).  This statutory exception, commonly known as the DJA

"tax exception," is directly related to the AIA.  When first adopted in 1934, the DJA

contained no tax exception.  A year later, after plaintiffs in several lawsuits sought to

use the DJA as an end-run around the AIA, Congress amended the statute by adding the

tax exception.  *See "Americans United" Inc. v. Walters*, 477 F.2d 1169, 1175 (D.C. Cir.

9

1973), *rev'd on other grounds sub nom. Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1974) (discussing the legislative history of the tax exception provision of the DJA).  The Senate report related to the proposed tax-exception amendment noted that "[t]he application of the Declaratory Judgment[] Act to taxes would constitute a radical departure from the long-continued policy of Congress (as expressed in [the AIA] and other provisions) with respect to the determination, assessment, and collection of Federal taxes."  S. Rep. No. 1240, 74th Cong., 1st Sess. 11 (1935); *see also Flora v. United States*, 362 U.S. 145, 164 (1960).  And the link between the DJA tax exception and the AIA has been confirmed by the courts.  The D.C. Circuit, for example, noted in a recent case that "the DJA tax exception serves a critical but limited purpose.  It strips courts of jurisdiction to circumvent the AIA by providing declaratory relief in cases restraining the assessment or collection of any tax."  *Cohen v. United States*, 650 F.3d 717, 729 (D.C. Cir. 2011) (en banc) (internal quotation marks omitted).

The well-documented history behind the tax exception to the DJA and its relationship to the AIA has led numerous courts of appeal, including the D.C. Circuit, to conclude that the scope of the DJA's tax exception is "coterminous" or "coextensive" with the AIA's prohibition.  *See, e.g.*, *Cohen*, 650 F.3d at 730-31; *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 583 (4th Cir. 1996) (finding that "the two statutory texts are, in underlying intent and practical effect, coextensive"); *Wyo. Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 933 (10th Cir. 1996) ("The reach of these two statutes is coextensive, with the Declaratory Judgment Act reaffirming the restrictions set out in the Anti-Injunction Act.") (internal quotation marks and citation omitted); *1000 Friends of Ore. v. Brady*, 898 F.2d 156 (9th Cir. 1990) ("The Declaratory Judgment Act is co-

extensive with the Anti-Injunction Act."); *Ecclesiastical Order of the ISM of AM, Inc.*

*v. IRS*, 725 F.2d 398, 404-5 (6th Cir. 1984) ("The two Acts, though not similarly

worded are . . . to be interpreted coterminously."); *Tomlinson v. Smith*, 128 F.2d 808,

811 (7th Cir. 1942)  ("[I]t is our view that the language which excepts federal taxes

from the Declaratory Judgment Act is co-extensive with that which precludes the

maintenance of a suit for the purpose of restraining the assessment or collection of a

tax.")  This means that the DJA's exemption for suits "with respect to Federal taxes" is

synonymous with the AIA's bar against suits that seek to restrain the "assessment and

collection" of federal taxes.  Thus, the DJA is not available as a means to seek

declaratory relief in suits that the AIA otherwise bars.

### C.  Challenges To An Organization's Section 501(c)(3) Status Pursuant to 26 U.S.C. § 7428

As noted above, this case was originally transferred to this Court on the grounds

that it was a case arising under Section 7428 of the Internal Revenue Code, 26 U.S.C.

§ 7428.  (Transfer Order at 1.)  That statute provides a mechanism by which

organizations that have applied for Section 501(c)(3) status can either challenge "a

determination by the [IRS] with respect to the initial qualification or continuing

qualification of an organization as an organization described in [S]ection 501(c)(3)," or

"a failure by the [IRS] to make a determination with respect to" an organization's

Section 501(c)(3) status.  26 U.S.C. § 7428(a).  Section 7428 also places certain

limitations on such suits, three of which are relevant here.  First, it limits the venue for

such suits to three courts: the U.S. Tax Court, the Court of Federal Claims, and the U.S.

District Court for the District of Columbia.  26 U.S.C. § 7428(a).  Second, those courts

are empowered only to provide declaratory relief.  *Id.*  Third, organizations wishing to

bring suit under Section 7428 to challenge either the agency's Section 501(c)(3) determination or the agency's failure to make a Section 501(c)(3) determination in a timely fashion must exhaust all available administrative remedies. *See* 26 U.S.C. § 7428(b)(2); *see also id.* (stating that, in the case of a suit challenging the IRS's failure to provide a Section 501(c)(3) status determination, "[a]n organization . . . shall be deemed to have exhausted its administrative remedies . . . at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination").

Section 7428 also has a direct relationship to the DJA.  As noted above, under the DJA tax exception, declaratory relief is not available for actions "with respect to Federal taxes *other than* actions brought under [S]ection 7428 of the Internal Revenue Code[.]"  28 U.S.C. § 2201 (emphasis added).  Thus, suits brought under Section 7428 to challenge the IRS's determination of an organization's Section 501(c)(3) status or the IRS's failure to act with respect to an organization's Section 501(c)(3) application are expressly exempted from the DJA's tax exception.  In other words, the plain language of the DJA carves out an exception to its own tax exception, such that even if a lawsuit that is brought under Section 7428 may be considered a suit "with respect to federal taxes" for the purpose of the DJA's tax exception, declaratory relief is nevertheless available.[4]

---

[4] As will be explained in Part III.C.1, *infra*, although the district court in Pennsylvania considered the instant action to be a case arising under Section 7428, this Court concludes that Section 7428 is not applicable here.  Consequently, the exception to the DJA tax exception plays no part in the Court's analysis of whether there is a statutory bar to Z Street's lawsuit.

III.    ANALYSIS

    A. **Subject Matter Jurisdiction**

Plaintiff asserts that, because the complaint alleges a violation of the

Constitution, this Court has subject matter jurisdiction over this dispute under 28

U.S.C. § 1331—the general federal-question jurisdiction statute, which by its terms

provides that "the district courts shall have original jurisdiction of all civil actions

arising under the Constitution, laws, or treaties of the United States." Indeed, it is well-

established that the federal-question statute "confer[s] jurisdiction on federal courts to

review agency action." *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009)

(internal quotation marks and citation omitted); *see also Ass'n of Nat'l Advertisers v.*

*FTC*, 617 F.2d 611, 619 (D.C. Cir. 1979) ("General federal question jurisdiction . . .

gives the district courts the power to review agency action"). Nevertheless, in its

motion to dismiss, Defendant asserts three different arguments that this Court cannot

exercise jurisdiction over Plaintiff's claim. First, Defendant argues that the AIA bars

the Court from granting the injunctive relief Plaintiff seeks in its complaint. (Def.'s

Mem. of Law in Supp. Of Mot. To Dismiss ("Def. Br."), ECF No. 19-1, at 4-12.)

Second, and similarly, Defendant argues that the DJA tax exception bars the court from

granting the declaratory relief that Plaintiff seeks. (*Id.* at 14-16.) Finally, Defendant

argues that the complaint should be dismissed on sovereign immunity grounds. (*Id.* at

16-20.) Because the jurisdictional bars of the AIA and DJA tax exception are

coterminous under the law of this Circuit, as explained above, this Court has employed

a single analysis to determine whether the two statutes prevent the Court from

considering Plaintiff's claim. *Cf. Fla. Bankers Ass'n v. U. S. Dep't of Treasury*, 13-cv-

529, 2014 WL 114519, at *6-7 (D.D.C. Jan. 13, 2014) (evaluating AIA and DJA together); *Justin v. United States*, 607 F. Supp. 2d 73, 76-77 (D.D.C. 2009) (same). For the reasons explained below, this Court concludes that the AIA and DJA do not preclude the exercise of jurisdiction over Plaintiff's constitutional claim, nor does sovereign immunity bar the instant action.

1. The AIA And DJA Do Not Bar Plaintiff's Constitutional Claim

On its face, the AIA precludes lawsuits that have been brought "for the purpose of restraining the assessment or collection of any tax," 26 U.S.C. § 7421, and the DJA's tax exception prevents a declaratory judgment action "with respect to Federal taxes" (other than one brought under Section 7428), 28 U.S.C. § 2201. As has been stated repeatedly above, these two categories of cases are effectively one and the same; therefore, the question that this Court must answer in determining whether the AIA and DJA bar Z Street's claim is whether the instant lawsuit is, in fact, one that seeks to restrain the "assessment and collection" of taxes. Fortunately, the D.C. Circuit has already provided substantial guidance regarding the scope of the "assessment and collection" prohibition.

a. *Suits Brought to Restrain The "Assessment and Collection" Of Taxes*

In *Cohen v. United States*, the D.C. Circuit (sitting en banc) grappled with the question of precisely when the AIA/DJA operate to bar a lawsuit related to federal taxes. 650 F.3d at 724-31. *Cohen* involved a challenge to a refund scheme that the IRS had developed to permit aggrieved taxpayers to recoup a three-percent excise tax on telephone calls that the agency had previously illegally extracted. *Id.* at 720 (citing 26 U.S.C. § 4251). Corporate taxpayers initially challenged the three-percent excise tax by

14

launching refund suits in multiple federal courts, each of which declared that the tax was illegal. *Id.* Thereafter, the IRS—which had continued to collect the excise tax through the pendency of the litigation—discontinued the tax and promulgated "a one-time exclusive mechanism for taxpayers to obtain a refund for excise taxes erroneously collected." *Id.* Numerous interested taxpayers then filed lawsuits around the country objecting to this refund scheme on the grounds that it violated the Administrative Procedure Act ("APA"); those suits were subsequently consolidated in the United States District Court for the District of Columbia. *Id.* at 721. After the district court dismissed the consolidated actions on the grounds that the plaintiffs had failed both to exhaust administrative remedies and to state a claim under the APA, a divided panel of the D.C. Circuit reversed in part, holding that the suit could go forward under the APA., and also concluding that neither the AIA nor the DJA barred the suit. *See Cohen v. United States*, 578 F.3d 1, 4, 14 (D.C. Cir. 2009).

The entire D.C. Circuit granted the Government's petition for en banc review, and like the panel before it, reversed the judgment of the district court. In concluding that the district court did have jurisdiction over the taxpayers' actions, the *Cohen* court examined at length the scope of the AIA's prohibition on suits "restraining the assessment or collection of taxes" and the DJA's prohibition against suits "with respect to Federal taxes." Discussing the former, the D.C. Circuit noted that the AIA "has 'almost literal effect': It prohibits only those suits seeking to restrain the assessment or collection of taxes." *Cohen*, 650 F.3d at 724 (quoting *Bob Jones*, 416 U.S. at 736). The actions challenging the IRS's new refund process were not such suits, the court reasoned, because the challenges at issue were "strictly about the *procedures* under

which the IRS will return taxpayers' money." *Id.* at 725 (emphasis added).  The court emphasized that the taxes in question had already been assessed and collected.  *Id.* ("The money is in the U.S. treasury; the legal right to it has been previously determined.").  Therefore, the exercise of jurisdiction over the case would not "obstruct the collection of revenue" or "alter Appellants' future tax liabilities" or "shift the risk of insolvency"—potential outcomes that had concerned the Supreme Court in prior AIA cases and had led it to conclude that the AIA/DJA bar was applicable.  *Id.* (distinguishing *Snyder v. Marks*, 109 U.S. 189 (1883); *Bob Jones*, 416 U.S. 725 (1974); *California v. Grace Brethren Church*, 457 U.S. 393 (1982)).

Moreover, the *Cohen* court explained that the Supreme Court has already rejected the IRS's theory that the AIA's "assessment and collection" language bars any and all lawsuits that might ultimately impact the amount of revenue in the U.S. treasury.  *Cohen*, 650 F.3d at 726 (citing *Hibbs v. Winn*, 542 U.S. 88, 102 (2004)). Although "[t]he IRS envisions a world in which no challenge to its actions is ever outside the closed loop of its taxing authority[,]" the D.C. Circuit made clear that, under Supreme Court precedent, the AIA's prohibition does not sweep that broadly: "'[a]ssessment' is not synonymous with the entire plan of taxation, but rather with the trigger for levy and collection efforts, and 'collection' is the actual imposition of a tax against a plaintiff[.]" *Id.* (internal quotation marks and citation omitted).  It is no surprise, then, that the D.C. Circuit has "allowed constitutional claims against the IRS to go forward in the face of the AIA" and has refused to "read[] the AIA to reach all disputes tangentially related to taxes." *Id.* at 726-27 (citing *We the People Foundation, Inc. v. United States*, 485 F.3d 140, 143 (D.C. Cir. 2007)).  Rather, the circuit has

clearly established that whether or not the AIA and DJA prohibit a suit against the IRS depends on whether the action is fundamentally a "tax collection claim," *id.* at 727 (quoting *We the People Foundation*, 485 F.3d at 143), which the Court must determine based upon "a careful inquiry into the remedy sought, the statutory basis for that remedy, and any implication the remedy may have on assessment and collection." *Id.* at 727.[5]

> b. *Application of* Cohen *Principles To Z Street's Constitutional Claim*

When viewed in the light of the standards articulated in *Cohen*, Z Street's First Amendment claim is not "a tax collection claim 'couched . . . in constitutional terms,'" *Cohen*, 650 F.3d at 727 (quoting *We the People Foundation*, 485 F.3d at 143), and therefore, cannot properly be characterized as a lawsuit implicating the "assessment or collection" of taxes for AIA/DJA purposes.  As noted, Z Street alleges not that the IRS unlawfully denied it a preferred tax status, but only that the IRS subjected it to unconstitutional viewpoint discrimination in considering its application for that status.  Thus, victory in this action would not provide an answer to the fundamental question of whether or not Z Street is entitled to Section 501(c)(3) status, and indeed, Z Street is not asking for any judicial determination to that effect.  Rather, Z Street here seeks only to have its application—good or bad—be evaluated using the same standards and criteria that apply to other organizations that the IRS reviews.

---

[5] With respect to the DJA, the *Cohen* court considered two questions that had been raised in dissent in the earlier panel decision:  whether the precedents interpreting the DJA tax exception as coterminous with the AIA had been superseded, and if not, whether the scope of the DJA tax exception in fact controlled the scope of the AIA, rather than the other way around.  *Cohen*, 650 F.3d at 727-31.  The court answered both questions in the negative, ultimately concluding that "[w]hat the AIA accomplishes by denying its application to 'any suit for the purpose of restraining the assessment or collection of any tax' the DJA accomplishes by an exception 'with respect to Federal taxes.'"  *Id.* at 731.  Thus, the court made clear that its consideration of whether the AIA barred the suit was equally applicable to the DJA.

In this regard, looking at the requested remedy as the D.C. Circuit requires, Z Street's complaint requests only two things:  (1) a declaration that the Israel Special Policy violates the First Amendment, and (2) an injunction that requires disclosure of information regarding the Israel Special Policy, bars the IRS from subjecting Z Street's application for Section 501(c)(3) status to the Israel Special Policy, and that mandates that Z Street's application be adjudicated "fairly" and "expeditiously."  (Am. Compl. at 16.)  Neither the declaration nor the injunction, on their face, have direct implications for the assessment or collection of taxes—Z Street merely asks the Court to require the IRS to go about its usual business of evaluating Section 501(c)(3) applications in a manner that comports with the Constitution.  Moreover, there is nothing in the record to suggest that Z Street brought this action for the purpose of resolving the matter of its own tax liability because the amended complaint makes crystal clear that Plaintiff is *not* asking the Court to reach any conclusion regarding (or indeed, even to consider) the organization's qualifications for tax-exempt status under Section 501(c)(3).  (*Id.*)  *See also Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983) (courts must look to the "primary purpose" of a lawsuit in order to decide whether the suit is one that was brought to restrain the assessment and collection of taxes (citing *Bob Jones*, 416 U.S. at 738)).  And the fact that Z Street's Section 501(c)(3) status is, here, beside the point wholly distinguishes the instant matter from *Bob Jones*—a Supreme Court case in which the issue centered on the IRS's decision to revoke a university's existing Section 501(c)(3) status based on the university's racially discriminatory admissions policies— and also effectively removes Z Street's claim from the realm of tax-related actions that are designed to "alter [plaintiffs'] future tax liabilities" and are therefore reasonably

18

categorized as suits that "seek[] to restrain the assessment or collection of taxes." *Cohen*, 650 F.3d at 725.

Second, and relatedly, even if Z Street prevails, there is little chance that the outcome of this lawsuit will actually have any impact on the U.S. Treasury's bottom line.  To be sure, this matter presents a closer case than *Cohen* in this regard because the IRS has not yet ruled on Z Street's application for Section 501(c)(3) status.  Indeed, unlike the circumstances in *Cohen*, the taxes that would be assessed and collected if Z Street is not deemed eligible for Section 501(c)(3) status are far from being a *fait accompli*; thus, there is still opportunity for any IRS-related litigation, including this one, to have some theoretical impact on the ultimate amount of Plaintiff's not-yet-determined tax liability.  But as far as the instant lawsuit is concerned, any such impact is clearly too remote to transform Z Street's constitutional claim into a tax collection suit.  As Z Street itself acknowledges on the very first page of its opposition brief, "[t]otal victory by Plaintiff in this case will not determine whether or not a tax is due: it will only establish a constitutionally valid process[.]"  (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss ("Pl. Br."), ECF No. 21, at 1.)  In other words, Z Street's ultimate tax liability will be a function of whether it qualifies for tax-favored treatment under the criteria laid out in Section 501(c)(3), not whether it prevails in this lawsuit, and the IRS's analysis of its qualifications will be based on Z Street's activities as an organization.  The only matter at issue in the instant lawsuit is whether, in addition to evaluating Z Street's activities as it would any other organization's, the IRS may constitutionally apply a more stringent standard of review that is allegedly reserved for organizations whose activities relate to the promotion of Israel.  And because a negative

answer to that question would not automatically ensure that Z Street (or any other Israel-related organization) will receive the tax-exempt status for which it has applied, the remedy sought in this lawsuit has no direct effect on the public fisc, and certainly not one that would impact the Treasury or otherwise affect the agency's assessment and collection of taxes.  *Cf. Fla. Bankers Ass'n*, 2014 WL 114519, at *6 (declining to apply the AIA/DJA bar where "the imposition of a federal tax does not necessarily follow" from the challenged agency action).

Not surprisingly, Defendant argues that the AIA/DJA bar *is* implicated because "[t]he relief plaintiff seeks is precisely the type of preenforcement interference that the Anti-Injunction Act prohibits."  (Def. Br. at 5 (internal quotation marks omitted).) Relying primarily on cases from other circuits that were issued prior to *Cohen* and that held, in one way or another, that the AIA applies broadly—*i.e.*, "not only to the assessment and collection of taxes, but to activities which are intended to or may culminate in the assessment or collection of taxes as well[,]" (Def. Br. at 5 (quoting *Linn*, 714 F.2d at 1282 (Clark, C.J., dissenting))—Defendant asserts that Z Street's requested relief falls within the ambit of the AIA's prohibition because adjudicating this lawsuit would require the Court to "interject itself into the [IRS's] process by which it determines whether Plaintiff is a tax-exempt organization," and might also "delay (and could frustrate) the eventual assessment of tax against Z Street[.]"  (Def. Br. at 5-6.)  In addition, Defendant contends that granting the injunctive relief Plaintiff seeks would contravene a significant "collateral objective" of the AIA—to wit, the goal of protecting the IRS from having to endure the "costs and delays of litigation 'pending a refund claim.'"  (*Id.* at 6 (quoting *Bob Jones*, 416 U.S. at 737).)  Moreover, to the

extent that the DJA "protects the 'overall pre-enforcement assessment and collection process'" in the same manner as the AIA (*id.* at 15 (quoting *Yamaha Motor Corp., USA v. United States*, 779 F. Supp 610, 613 (D.D.C. 1991)), Defendant maintains that that statute, too, "bars the relief requested for the same reason the Anti-Injunction Act does." (*Id.* at 15 n. 5.)[6]

Whatever the merits of these AIA/DJA-related arguments at the time Defendant's initial brief in this matter was filed, these arguments now clearly fail for the very simple reason that viewing the AIA as an expansive shield against every lawsuit that challenges IRS activity was resoundingly rejected in *Cohen*. As explained above, the en banc D.C. Circuit drew a clear line between suits that themselves seek to enjoin the assessment and collection of taxes—which the AIA and DJA prohibit—and other actions that could be brought against the IRS for a different purpose and to a different effect. *See, e.g.*, *Cohen*, 650 F.3d at 727 ("The AIA, as its plain text states, bars suits concerning the 'assessment or collection of any tax.' *It is no obstacle to other claims seeking to enjoin the IRS*, regardless of any attenuated connection to the broader regulatory scheme." (emphasis added)). Defendant has essentially ignored this critical line-drawing determination by insisting that, despite the fact that Z Street's action has neither the purpose nor the effect of restraining the agency's tax-collecting function, the instant constitutional claim should nevertheless be characterized as a "pre-enforcement" tax collection matter within the sweep of the AIA. (*See* Def.'s Reply Brief ("Def.

---

[6] Defendant's initial brief in this matter was filed in a district court in the Third Circuit within two months of the D.C. Circuit's *Cohen* decision. Presumably as a result, Defendant did not assume that the AIA and DJA were coterminous, as the en banc D.C. Circuit held, although it did recognize that courts in other jurisdiction had so held. (See Def. Br. at 14-15 (noting that "the federal exemption to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act" (internal quotation marks and citation omitted)).) Moreover, Defendant did not directly address *Cohen* and the implications of that decision on its argument regarding the scope of the AIA.

Reply"), ECF No. 22-1, at 7.)  This contention is clearly out of step with how the AIA

and DJA have long been interpreted in this jurisdiction.  *See, e.g.*, *We the People*

*Foundation*, 485 F.3d at 143 (holding that the AIA did not bar a First Amendment claim

against the IRS).  Indeed, in the face of *Cohen*'s clear pronouncement about the limits

to the scope of the AIA and DJA, the best Defendant can do here is to argue that *Cohen*

is somehow inapplicable—which it predictably maintains in its First Supplemental Brief

when it points out that *Cohen* involved an APA claim and asserts that the D.C. Circuit's

holding turned on the presence of "final agency action," which, according to Defendant,

is lacking here.  (*See* Def.'s First Supp. Br., ECF No. 33, at 3 ("Z Street's reliance on

*Cohen* is inapposite because there is no final agency action for the Court to review in

this case.").)  But Z Street has not brought any APA challenge, as explained further

below, and this Court is at a loss to see how the presence, or absence, of final agency

action has any bearing on the threshold issue of whether the statutory prohibitions set

forth in the AIA and DJA prohibit Z Street's constitutional claim.  In any event,

Defendant's attempt to recharacterize *Cohen* as a case that addresses only APA claims,

and thereby draw attention away from its holding regarding the extent and applicability

of the AIA/DJA, is clearly mistaken.  *See Cohen*, 650 U.S. at 736 (concluding that

because the suit did not concern the assessment or collection of taxes, "neither the AIA

nor the DJA provide a limitation on [the court's] exercise of [jurisdiction].")[7]

---

[7] Because this Court concludes that the AIA and DJA on their face are not applicable to Plaintiff's
claim, it does not need to address Defendant's additional arguments as to why Plaintiff's claim does not
meet the criteria for certain judicially crafted exceptions to those statutes' jurisdictional bars.  (*See*
Def. Br. at 6-14.)

2.  <u>Sovereign Immunity Does Not Bar Plaintiff's Constitutional Claim</u>

As an alternative to the argument that the AIA and DJA bar Plaintiff's First

Amendment claim, Defendant argues that the Court nonetheless lacks jurisdiction

because of sovereign immunity.  Under the firmly-established doctrine of sovereign

immunity, the United States is immune to suit unless Congress has expressly waived the

immunity defense.  *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is

axiomatic that the United States may not be sued without its consent and that the

existence of consent is a prerequisite for jurisdiction."); *Cohens v. Virginia*, 19 U.S.

264, 411-12 (1821) ("The universally received opinion is, that no suit can be

commenced or prosecuted against the United States[.]"); *Webman v. Fed. Bureau of*

*Prisons*, 441 F.3d 1022, 1025 (D.C. Cir. 2006).  The sovereign immunity doctrine

applies equally to the government itself and to a federal official sued in his official

capacity.  *Jackson v. Donovan*, 844 F. Supp. 2d 74, 76 (D.D.C. 2012) (citing *Kentucky*

*v. Graham*, 473 U.S. 159, 165-66 (1985)).  Where a plaintiff has brought suit against

the federal government (or a government official sued as such), a federal court is

without jurisdiction to consider the complaint in the absence of an express waiver of

sovereign immunity.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (noting that

"[s]overeign immunity is jurisdictional in nature"); *Fleming v. Nat'l Transp. Safety Bd.*,

13-5287, 2014 WL 590974, at *1 (D.C. Cir. Feb. 7, 2014) (same).  The plaintiff bears

the burden of establishing that sovereign immunity has been waived or abrogated.  *Tri-*

*State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003).

According to Defendant, Z Street has failed to carry this burden because its

complaint invokes only the DJA (28 U.S.C. § 2201) and the general federal-question

jurisdiction statute (28 U.S.C. § 1331) as the basis of this Court's jurisdiction over Plaintiff's claim, neither of which, according to Defendant, provides the requisite waiver of sovereign immunity.  (Def. Br. at 17-18.)  As an initial matter, Defendant is correct that neither Section 2201 nor Section 1331 of Title 28 provides an express waiver of sovereign immunity.  *See Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008).   But Defendant is wrong to argue that sovereign immunity bars the instant action because Congress, through the Administrative Procedure Act ("APA"), has expressly waived sovereign immunity for suits such as this one.  (*See* Pl. Br. at 8.)[8]

The relevant APA provision provides that

> [a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.  This section waives sovereign immunity with respect to suits for non-monetary damages that allege wrongful action by an agency or its officers or employees, and the instant lawsuit fits precisely those criteria.  As has been stated repeatedly above, Z Street seeks only declaratory and injunctive relief regarding the alleged process that the IRS uses to review the Section 501(c)(3) applications that certain organizations submit; thus, it is an action "seeking relief other than money damages." *Id.*  Moreover, Z Street's First Amendment claim challenges the actions of the agency, or its employees, in allegedly employing the Israel Special Policy.

---

[8] Plaintiff's brief in opposition to Defendant's motion to dismiss identifies the APA as the basis for its contention that sovereign immunity has been expressly waived.  (*See* Pl. Br. at 8; *see also* Def. Reply at 2-3 (acknowledging that Plaintiff relies on the APA for sovereign immunity purposes).)

Consequently, the waiver of sovereign immunity that the APA provides covers the claim at issue here.  *See, e.g.*, *Kaufman v. Mukasey*, 524 F.3d 1334, 1338 n. 5 (D.C. Cir. 2008) (sovereign immunity did not bar constitutional claims against seeking injunctive relief against the Attorney General); *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) (noting that the APA "eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity.").

Defendant recognizes that the APA provides a sovereign immunity waiver; nevertheless, it argues that Z Street's claim does not qualify for that waiver because the waiver provision appears in the APA and there has been no "final agency action" in this case, which is a prerequisite for suits in federal court that are brought pursuant to the APA.  (*See* Def. Reply at 3-6.)  *See also Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006) ("Review under the APA is . . . limited to 'final agency action for which there is no other adequate remedy in a court.'" (quoting 5 U.S.C. § 704)).  Defendant's argument misunderstands both the nature of the APA's waiver of sovereign immunity and the "final agency action" requirement.

First of all, it is clear beyond cavil that a suit need not have been brought *pursuant to* the APA in order to receive the benefit of that statute's sovereign immunity waiver; indeed, the "APA's waiver of sovereign immunity applies to any suit whether under the APA or not."  *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).  To be sure, the instant action is not a suit that has been brought pursuant to the APA.  But that fact is of no moment because "[t]here is nothing in the language of the second sentence of § 702 that restricts its waiver to suits brought under the APA."

*Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006); *see also id.* (noting that the APA "waives sovereign immunity for '[a]n action in a court of the United States seeking relief other than money damages,' not [solely] for an action brought under the APA").

Furthermore, the "final agency action" requirement—which *is* applicable only to suits that have been brought under the APA—is substantively different than, and by no means even conceptually related to, the statute's sovereign immunity waiver. Although suits brought under the APA do trigger the "final agency action" mandate, "final agency action" is not a demand that relates to a federal court's jurisdiction but is, instead, an *exhaustion* requirement that serves to protect the administrative decision-making process insofar as it limits the court's ability to consider an APA claim until an agency has rendered its final decision. *See Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003) (noting that the purpose of the final agency action requirement is both to keep courts from "improperly intrud[ing] into the agency's decisionmaking process" and to avoid "squander[ing] judicial resources" (internal quotation marks and citation omitted)); *see also* 33 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 8397 (3rd ed. 2004) ("The [final agency action] requirement is intended both to preserve the integrity of the administrative process and protect judicial resources.") There is no reason to believe that Congress intended for the "final agency action" requirement to have any bearing on the scope of the separate sovereign immunity waiver, nor should it, given that an express waiver of immunity from suit under specified circumstances is by nature entirely different than a prescription that a claim brought under a certain statutory

provision must be exhausted prior to suit. *Cf. Reliable Automatic Sprinkler Co.*, 324 F.3d at 731 (noting that "the requirement of final agency action is not jurisdictional[.]")

Finally, and in any event, the D.C. Circuit has already considered—and firmly rejected—the same faulty 'no final agency action equals no sovereign immunity waiver' argument that Defendant seeks to advance here. *See Trudeau*, 456 F.3d at 187 ("We also hold that the [sovereign immunity] waiver applies regardless of whether [the agency action in question] constitutes 'final agency action.'"); *see also Cohen*, 650 F.3d at 723. It is well-established that, because that the APA is not, in itself, a jurisdiction-conferring statute, *see Califano v. Sanders*, 430 U.S. 99, 107 (1977); *NetCoalition v. SEC*, 715 F.3d 342, 347 (D.C. Cir. 2013), the statutory prerequisites to bringing an APA claim—such as final agency action—have no jurisdictional impact. In other words, because the APA simply provides "a limited cause of action for parties adversely affected by agency action," *Trudeau*, 456 F.3d at 185, the restrictions that attach to APA claims apply only if that statute is the basis on which the plaintiff states a cause of action and do not present any jurisdictional bar to plaintiffs seeking access to the federal courts under a cause of action unrelated to the APA. *Cf. Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("We expressly reject[] the proposition that the presence of final agency action is a jurisdictional issue." (internal quotation marks and citation omitted)). And, as already noted, where a plaintiff has a cause of action that is independent of the APA, it may eschew the statutory requirements that apply only to APA claims and rely nevertheless on the APA's sovereign immunity waiver to support its contention that sovereign immunity does not block the court from exercising jurisdiction over the claim.

So it is here.  Z Street seeks to proceed with an action for declaratory and injunctive relief that arises directly out of the First Amendment.  (Am. Compl. ¶¶ 42-44.)  The D.C. Circuit "ha[s] inferred such a cause[.]"  *Trudeau*, 456 F.3d at 190 (citing *Hubbard v. EPA*, 809 F.2d 1, 11 n.15 (D.C. Cir 1986) (holding that the plaintiff could sue the EPA for violating the First Amendment because "the court's power to enjoin unconstitutional acts by the government . . . is inherent in the Constitution itself")).  Thus, Plaintiff has a cause of action independent of the APA.  Moreover, its First Amendment claim qualifies as one "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity"; therefore, it falls within the waiver of sovereign immunity that the APA provides.  *See* 5 U.S.C. § 702.  Consequently, sovereign immunity does not divest this Court of jurisdiction over Plaintiff's claim.

### B.  Equitable Relief Can Be Granted Because Plaintiff Has No Other Adequate Remedy At Law

Defendant's final argument is that Z Street has failed to state a claim upon which relief can be granted because it has an adequate remedy at law and thus injunctive relief is not available to it.  (Def. Br. at 1-2.)  "The general rule is that injunctive relief will not issue when an adequate remedy at law exists."  *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 n. 6 (D.C. Cir. 2006); *see also Sibley v. Macaluso*, 13-7128, 2014 WL 211219 (D.C. Cir. Jan. 9, 2014) (same); 11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2942 (2d ed. 1995) ("[T]he main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy.").

Defendant purports to identify four different avenues through which Z Street can obtain the relief it seeks.  First, Defendant suggests that Z Street can file a suit under 26 U.S.C. § 7428 to compel a determination from a federal court as to whether or not it qualifies for tax-exempt status under Section 501(c)(3).  (Def. Br. at 3.)  Second, Defendant contends that, if the IRS determines that Z Street does not qualify for Section 501(c)(3) status, Z Street can challenge that determination in United States Tax Court under 26 U.S.C. §§ 6212-13.  (*Id.*)[9]  Third, Defendant argues that if any tax is assessed against Plaintiff, it can pay the tax and then sue for a refund under 26 U.S.C. § 7422.  (*Id.* at 4.)  And finally, in a variation of its third argument, Defendant argues that a donor to Z Street can claim a deduction for its donation, and if the deduction is disallowed, sue for a refund under 26 U.S.C. § 7422.  (*Id.*)  As explained below, this Court concludes that none of these paths to the courthouse would in fact provide Z Street with an adequate remedy for the harm that it has alleged.

1. <u>A Challenge To The IRS's Determination Of Plaintiff's Qualifications Under 26 U.S.C. § 7428</u>

Section 7428 of Title 26 of the U.S. Code provides exclusive jurisdiction in the U.S. Tax Court, the Court of Federal Claims, or the U.S. District Court for the District of Columbia for any controversy involving "a determination by the [IRS] with respect to the initial qualification or continuing qualification of an organization described in" Section 501(c)(3) of the Internal Revenue Code.  As noted above, the instant case was transferred to this district from the Eastern District of Pennsylvania on the ground that it is a case arising under 26 U.S.C. § 7428.  (*See* Transfer Order at 1.)  It is not difficult

---

[9] Defendant's reference to 26 U.S.C. § 6613 in its brief (Def. Br. at 3) is an apparent misprint; the intended reference appears to be to § 6213.  *See* 26 U.S.C. § 6213 (setting forth procedures for filing a deficiency suit).

to see why Defendant points to this statute as providing Plaintiff an adequate remedy at law—the statute establishes an express cause of action for organizations that seek to challenge the agency's determination that they are not qualified for tax-exempt status under Section 501(c)(3), and there is no dispute that the genesis of the instant lawsuit is Z Street's application for Section 501(c)(3) status; indeed, Z Street became aware of the alleged Israel Special Policy as a result of the agency's process of determining whether or not the organization would qualify for such status.  But upon closer inspection, it is clear that Section 7428 is not, in fact, the source of Z Street's claim, and what is more, Section 7428's limited cause of action does not even authorize the relief that Z Street is seeking here.

By its terms, Section 7428 applies when there is an "actual controversy" involving "a determination by" the IRS with respect to "the initial qualification or continuing qualification of an organization as an organization described in" Section 501(c)(3).  Accordingly, the only available remedy under Section 7428 is "a declaration with respect to [an organization's] initial qualification or continuing qualification" for tax exempt status.  26 U.S.C. § 7428(a)(1).  This language makes crystal clear that Congress enacted Section 7428 to provide an effective mechanism for organizations to seek judicial review of an IRS determination (or lack of determination) of their Section 501(c)(3) status—an interpretation that the legislative history of the provision also supports.  *See*, *e.g.*, S. Rep. 94-938 at 587, 1976 U.S.C.C.A.N. 3438 at 4011 (describing Section 7428 as an "amendment for a declaratory judgment procedure under which an organization can obtain a judicial determination of its own status as a charitable, etc., organization").

By contrast, Z Street's complaint does not ask this Court to review or determine whether it is entitled to Section 501(c)(3) status; rather, Z Street has been adamant in its papers and at the motion hearing that it does not seek through this lawsuit to be awarded that status at all.  (*See*, *e.g.*, Pl. Br. at 1; Hr'g Transcript, ECF No. 44, at 11:19-24.)  Instead, regardless of whether or not it is ultimately granted tax-exempt status, Plaintiff seeks only to have a "constitutionally valid process" used when its application for Section 501(c)(3) status is evaluated—nothing more and nothing less. (*Id.*)  This distinction is not lost on the parties:  in their respective responses to the Court's order requesting supplemental briefing on the question of whether this case did in fact arise under Section 7428, both denied that this was a matter brought under that statute.  (*See* Def.'s Second Supp. Mem., ECF No. 38, at 6-9; Pl.'s Second Supp. Mem., ECF No. 37, at 5-6.)  And the transfer order itself stated that "this case is about a constitutionally valid process," not a determination of whether Plaintiff qualified for tax-exempt status.  (Transfer Order at n. 1.)  Furthermore, because the plain language of the statute authorizes the reviewing court only to issue "a declaration with respect to [an organization's] initial qualification or continuing qualification" for tax-exempt status, it appears that this Court would not have the authority to grant the relief that Plaintiff has requested—a declaration that the alleged "Israel Special Policy" is unconstitutional and an injunction against its further use—under that statutory provision.  Consequently, this instant action does not arise under Section 7428, nor does that statute provide an adequate remedy at law through which Plaintiff can obtain the relief it seeks.

2. <u>A "Deficiency" Or "Refund" Suit Under 26 U.S.C. §§ 6212-13 Or § 7422</u>

As an alternative to its argument that Plaintiff could have sought relief under Section 7428, Defendant points to 26 U.S.C. §§ 6212-13 as providing Plaintiff an adequate remedy at law such that an injunction is not warranted. These provisions allow an organization that has received a notice of deficiency from the IRS to "file a petition with the Tax Court for a redetermination of the deficiency." 26 U.S.C. § 6213; *see also Bob Jones*, 416 U.S. at 730 (Sections 6212 and 6213 allow a taxpayer, "upon the assessment and collection of income taxes [to] litigate the legality of the [IRS's] action by petitioning the Tax Court to review a notice of deficiency."). In other words, under these statutes, if the IRS determines that a taxpayer has a tax deficiency, it provides notice to that taxpayer, who then has the right to challenge the IRS's determination of a deficiency in the Tax Court. The deficiency suits that Sections 6212 and 6213 authorize are by their very nature aimed at the determination of a taxpayer's ultimate tax liability, which means that the invocation of those sections as an alternative remedy fails for the same reason that this Court rejected Defendant's invocation of Section 7428. In short, the argument that Sections 6212 and 6213 apply relies on the assumption that Z Street's claim in this case is about tax liability, when the organization's core contention is not about the amount of tax owed but about the constitutionality of the process that the IRS employs in evaluating the Section 501(c)(3) applications of Israel-related organizations. Consequently, a deficiency suit will not provide Plaintiff an adequate remedy for the claim it has actually brought.

Finally, it almost goes without saying that Defendant's contention that a refund suit pursuant to 28 U.S.C. § 7422 provides an adequate remedy is similarly flawed.

32

Regardless of whether Plaintiff itself brings such a suit or a donor who has been denied a deduction brings it (as Defendant speculates), Section 7422 merely provides an administrative framework under which suits seeking to recover taxes "alleged to have been erroneously or illegally assessed or collected" may be brought to court, and specifies, among other things, the administrative remedies a plaintiff must exhaust before bringing such suit. *See* 26 U.S.C. § 7422. However, just like Sections 6212 and 6213, Section 7422 is only relevant if taxes have been assessed and collected (erroneously), and if the taxpayer seeks a refund of the money that was tendered. *See, e.g.*, *Bob Jones*, 416 U.S. at 730-31. Here, there is no refund to be requested because no tax has been assessed or collected, nor is Plaintiff's challenge even tangentially related to any such remedy. In this regard, it makes no difference whether, on one hand, Z Street waits for a Section 501(c)(3) determination to be made and, if it is denied tax-exempt status, pays taxes and later brings a Section 7422 suit, or, on the other, encourages a donor to do so after the donor has been denied a deduction—in neither case would a suit seeking a tax refund address the organization's constitutional claim regarding the procedures used in determining its Section 501(c)(3) status. Therefore, this Court concludes that Defendant is mistaken when it argues that Plaintiff has an adequate remedy at law such that it is foreclosed from seeking injunctive relief. And given that the "adequate remedy at law" theory is Defendant's only basis for maintaining that Z Street's complaint must be dismissed pursuant to Rule 12(b)(6), the Court also rejects Defendant's contention that Z Street has failed to state a claim upon which relief can be granted.

**IV.     CONCLUSION**

Boiled to bare essence, all of Defendant's arguments for why this matter must be dismissed—(1) that the AIA and DJA bar Plaintiff's claims; (2) that sovereign immunity protects the Defendant; and (3) that no injunction is available because Plaintiff has an adequate remedy at law—rest on the characterization of Z Street's claim as a complaint about tax liability, when it is not.  To be sure, Congress has, for good reason, provided statutory safeguards to "protect[] the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre[-]enforcement judicial interference."  *Bob Jones*, 416 U.S. at 736.  But the importance of the IRS's tax collection function to the overall operation of the Federal government does not mean that each and every lawsuit against the IRS—no matter the actual claim—is susceptible to reframing as one that interferes with that critical function.  *See Cohen*, 650 F.3d at 727.  Defendant struggles mightily to transform a lawsuit that clearly challenges the constitutionality of the process that the IRS allegedly employs when it determines the tax-exempt status of certain organizations into a dispute over tax liability as a means of attempting to thwart this action's advancement.  But the instant complaint, which in no way seeks an assessment of the taxes to be paid or even a determination of the Plaintiff's Section 501(c)(3) status, is not so easily deterred.  Consequently, as the accompanying order states, Defendant's motion to dismiss must be denied.


DATE:  May 27, 2014                              *Ketanji Brown Jackson*
                                                 KETANJI BROWN JACKSON
                                                 United States District Judge