| | |
|---|---|
| **From:** | Urban Joseph J |
| **Sent:** | Thursday, August 23, 2012 10:57 AM |
| **To:** | Fish David L; Lowe Justin |
| **Subject:** | FW: Jun 9-09, 17 coordination |

Defendant Exhibit 1-B

_____

From: Miller Thomas J
Sent: Monday, June 22, 2009 1:39 PM
To: Choi Robert S
Cc: Urban Joseph J
Subject: RE: Jun 9-09, 17 coordination


I agree that we have no basis for the illegality or fundamental public policy arguments.  We are not the arbiters of what is illegal or contrary to fundamental public policy: we follow decisions made by agencies that have authority.  Our determination that racial discrimination was inconsistent with exemption for educational institutions and other organizations that provided services to the public was made only after it the public policy was evident from U.S. law regarding education, etc., so that allowing discriminatory schools to be tax exempt would have been an anomaly. Similarly with recreational facilities for public use.  But, at the time, the Service spoke of the position as applying to "pools and schools."  Thus, I don't think we ever raised the issue of whether a discriminatory church would be denied exempt status.

Even if the US Department of State were to express a view against this activity, I don't think it would elevate it to the level of something illegal or contrary to fundamental public policy.  To be illegal would require legal sanction, such as the sanctions enforced by OFAC.  Organizations and citizens are not required to march in lockstep with USG policy: they are required to obey its laws.

That being said, I do think we need to consider the basic issue of what is the charitable purpose this organization purporting to serve.  In other words, what is the charitable purpose served by rebuilding an Israeli settlement in the Occupied Territories?  Is it combating community deterioration, relieving neighborhood tensions, etc., as set out in the regulations under section 501(c)(3)?  Or relief of poverty?  The specific purpose may depend on the specific aid it intends to provide, but the perspective of the US Government may be useful in the determination.  If the primary purpose in providing the aid is to further a non-exempt purpose - the Israeli Government's political objective of establishing settlements in disputed territory - rather than a charitable one, it would seem the organization should be denied without resort to questions of illegality.

I hope this is not too fuzzy.  It is off the top of my head.

Tom M.

Thomas J. Miller
Technical Advisor
Exempt Organizations
Rulings & Agreements
(202) 283-9472

ZST401-001321

Fax (202) 283-9462

---

From: Choi Robert S
Sent: Monday, June 22, 2009 12:48 PM
To: Paz Holly O; Urban Joseph J; Miller Thomas J
Cc: Fish David L; Choi Robert S; Westcott Cindy M; Abner Donna J; Kall Jason C
Subject: RE: Jun 9-09, 17 coordination


Yes, you are correct. You have summarized below what our folks should and should not be doing as they develop these types of applications. I have spoken to Cindy and Donna about this issue as well---please make sure your folks are aware of the sensitivity of this issue. Joe and Tom, any add'l thoughts or comments?

---

From: Paz Holly O
Sent: Monday, June 22, 2009 12:27 PM
To: Choi Robert S; Urban Joseph J; Miller Thomas J
Cc: Fish David L
Subject: FW: Jun 9-09, 17 coordination


Ward brought the attached to my attention on Friday. [6103] [6103] [6103] Ward has not yet responded to Nancy. From what I understand of the discussions about the Jerusalem Post article a few weeks ago, I believe we should tell Nancy that we must be careful not to refer to the settlements as illegal or base the determination on illegality but that we can and should inquire as to how rebuilding of the settlement serves the org's exempt purpose. Is that correct?

Thanks,

Holly


Holly Paz

Manager | EO Tech. Guidance & Quality Assurance Group 2

(p) (202) 283-9473 | (f) (202) 283-8937

---

From: Thomas Ward L
Sent: Friday, June 19, 2009 11:47 AM
To: Paz Holly O
Cc: Goff Elizabeth D
Subject: FW: Jun 9-09, 17 coordination

ZST401-001322

Dear Holly,

As I discussed, | 6103 |
| 6103 |

The question is whether we wish to raise objections on the ground of violation of well-established public policy.  It would help if we could provide some guidance, however informal, to Determs on this issue.  The President's recent Cairo speech came out forcefully against such continued construction, but the situation is pretty fluid and has been for a long time.
http://www.whitehouse.gov/the_press_office/Remarks-by-the-President-at-Cairo-University-6-04-09/
"At the same time, Israelis must acknowledge that just as Israel's right to exist cannot be denied, neither can Palestine's. The United States does not accept the legitimacy of continued Israeli settlements.  (Applause.)  This construction violates previous agreements and undermines efforts to achieve peace.  It is time for these settlements to stop.  (Applause.)"

Thanks, Ward

Obama's Friends, Aides Help Shape Stance on Settlements
President Sees Expansion as Blocking Mideast Peace Deal


By Glenn Kessler and Michael D. Shear
Washington Post Staff Writers
Saturday, June 13, 2009


President Obama's close friends and key advisers have helped him shape the toughest line against the continued expansion of Israeli settlements since the administration of President Jimmy Carter.

The result has been a confrontation with Israeli Prime Minister Binyamin Netanyahu that has surprised the Israeli government and many analysts. Netanyahu is preparing to make a major speech tomorrow in which he is expected to respond to the new American pressure.

Obama's aides are steeped in the complex issues of the Israeli-Palestinian conflict and in U.S. attempts to resolve it. Many of them bring long memories of difficult dealings with Netanyahu when he served as prime minister more than a decade ago.

Obama's advisers have concluded that peace in the Middle East will require an end to the construction of new Israeli homes on occupied territory that Palestinians claim for a new state. In his speech in Cairo this month, Obama made it clear he had reached the same conclusion. Forcing Netanyahu to relent on settlements would offer the U.S. administration leverage in persuading Arab states to engage in peace talks.

"There is a strong consensus in the White House that the status quo is not going to produce progress and that the moment could slip away here for a real, just, lasting peace that would bring Israel <http://www.washingtonpost.com/wp-srv/world/countries/israel.html?nav=el>  the security it needs," said David Axelrod, one of Obama's top advisers.

But several senior White House officials described the president's views on Israeli settlements as years old and not the product of recent events or discussions. "It would be a mistake to suggest that anyone led him to this position," a senior adviser said. "It's one that he generated himself."

In Chicago, long before becoming president, Obama's closest confidants included staunch supporters of Israel whose tough views on the need to stop settlements mirror his current public position. Abner Mikva, an Obama mentor and former law professor, was one of them.

3

ZST401-001323

"There has to be realistic talks about how the two states will get along together," Mikva said, describing Obama's thinking on the subject of Middle East peace before being elected to the U.S. Senate. "You can't do that if one state, as you're talking, is picking up more land."

White House aides say the president has been careful to insist that Palestinians must also act to fulfill their responsibilities, such as bolstering security and ending anti-Israeli incitement.

"It is a sign of neither courage nor power to shoot rockets at sleeping children, or to blow up old women on a bus. That is not how moral authority is claimed; that is how it is surrendered," Obama said in the Cairo speech.

But his recent language about settlements is the starkest of any U.S. president in three decades, and tougher than most of his public rhetoric since emerging on the national scene.

One of the president's close friends in Chicago, the late Rabbi Arnold Wolf, wrote last year of his disappointment that Obama had often publicly softened his private positions.

"For my part, I've sometimes found Obama too cautious on Israel," said Wolf, who in 1973 co-founded an organization that advocated creating a Palestinian state. "He, like all our politicians, knows he mustn't stray too far from the conventional line, and that can be disappointing. But unlike anyone else on the stump, Obama has also made it clear that he'll broaden the dialogue."

In June 2005, during a Senate Foreign Relations Committee hearing on Israel's withdrawal from the Gaza Strip, then-Sen. Obama took note of domestic politics within Israel, saying, "There are important and difficult political problems within Israel with respect to the settlers."

By March 2007, as he was beginning his presidential quest, Obama hinted at his feelings about the settlements in a speech before the leading pro-Israel organization, the American Israel Political Affairs Committee. He referred to "stones" that will "be heavy and tough for Israel to carry."

In June 2008, while on the verge of securing the Democratic nomination, Obama went further. He told the same group that Israel could advance the cause of peace by refraining "from building new settlements, as it agreed to do with the Bush administration."

Both those references to settlement were mild compared with his speech in Cairo. The president declared that "the United States does not accept the legitimacy of continued Israeli settlements. This construction violates previous agreements and undermines efforts to achieve peace. It is time for these settlements to stop."

Obama's Middle East advisers share similar views about the need to rein in the settlements, as agreed to in the 2003 "road map" to peace.

White House Chief of Staff Rahm Emanuel worked in the Clinton White House when Netanyahu reneged on an understanding to stop the growth of settlements. As a member of Congress, Emanuel was one of only two Jewish lawmakers to co-sponsor a resolution supporting a peace plan that would have abandoned to the Palestinians one of the West Bank's largest settlements -- Ariel, with about 40,000 settlers.

Former senator George J. Mitchell, the president's special envoy for Middle East peace, headed the commission in 2001 that first recommended a settlement freeze. "Stop construction, stop building and expanding," Mitchell declared during a television interview seven years ago.

ZST401-001324

As a special envoy for then-Secretary of State Condoleezza Rice in 2008, James L. Jones -- now Obama's national security adviser -- examined the security issues involved in creating a Palestinian state. The Israeli media reported that he drafted a report, never released by the Bush administration, that was highly critical of Israel's policies in the West Bank.

Politically, there is little danger for the president in confronting Israel, especially if it leads to a peace deal. Polls suggest that settlements hold little appeal to many American Jews and have rapidly decreasing support in Congress.

"They made a political calculation that this is something they could sell on Capitol Hill," said Samuel Lewis, former U.S. ambassador to Israel. "It will divide the Israelis and put Netanyahu on the defensive."

Within the Obama White House, discussions leading up to the Cairo speech focused more on the ramifications of a tougher stand in the Arab and Israeli communities, officials said. The discussions were informed by polling in Israel, which indicates that many Israelis view the settlers as a fringe group and do not support settlement expansion.

"Was there an awareness that that point and others in the speech, that there would be some churning in the commentary or so on?" one top Obama adviser said. "There was. But he viewed that as a necessary part of moving the process forward."

Early evidence of that view was captured on tape during a private gathering in Cleveland in 2008. Obama challenged Jewish groups to allow for greater debate on Israeli actions and not demand what he called a "pro-Likud approach," referring to Netanyahu's party.

"This is where I get to be honest, and I hope I'm not out of school here," he said in a transcript published by JTA, a news service on Jewish issues. "I think there is a strain within the pro-Israel community that says unless you adopt an unwavering pro-Likud approach to Israel that you're anti-Israel. . . . If we cannot have an honest dialogue about how do we achieve these goals, then we're not going to make progress."

Israel pushes Obama to allow some settlement growth


By Adam Entous
Reuters
Tuesday, June 16, 2009 7:36 AM


JERUSALEM (Reuters) - Prime Minister Benjamin Netanyahu wants to negotiate a deal with Washington under which Israeli building in existing Jewish settlements can go forward in certain cases, Israeli and Western officials said Tuesday.

Under pressure from U.S. President Barack Obama, Netanyahu this week publicly accepted for the first time the internationally backed goal of Palestinian statehood, but set a series of pre-conditions that were rejected by the Palestinians.

Netanyahu has refused to accept Obama's direct call for a full settlement freeze in the Israeli-occupied West Bank, defending building in existing blocs to accommodate growing Jewish settler families, known-called "natural growth."

Palestinian President Mahmoud Abbas has demanded a halt to all building, including natural growth, as a condition for resuming stalled peace negotiations with Israel.

Western officials said Netanyahu's advisers have told their American and European counterparts that the Israeli government lacks legal authority to stop building in cases in which construction tenders have already been awarded or newly-built homes have already been purchased.

ZST401-001325

U.S. officials in the region had no immediate comment but a senior Western official said some in Washington were "sympathetic" to Netanyahu's position. A full settlement freeze could break up the prime minister's right-leaning coalition.

"I think there is understanding in the United States and in Europe concerning our basic demand to allow at least natural growth," Israeli Foreign Minister Avigdor Lieberman told Israel Radio during a visit to Europe.

WESTERN REJECTION

Prime Minister Gordon Brown, in a telephone conversation with Netanyahu Monday, made clear that Britain would accept no building, calling for a "complete freeze" in line with a 2003 U.S.-backed peace "road map," Brown's spokesman said.

Israeli officials say Netanyahu hopes his highly conditional acceptance of Palestinian statehood, made in a major policy address earlier this week, will persuade Obama to show more flexibility on the issue of settlements.

In an interview with U.S. television, Netanyahu said he would meet with Obama's Middle East envoy George Mitchell during a visit to Europe next week to discuss settlements, acknowledging that it remained an "issue of contention."

"And I hope that ... my government and the Obama administration can find a common position on this because we'd like to move the peace process forward," Netanyahu said.

A senior Western diplomat said Washington's focus was shifting somewhat, from the highly contentious settlement issue to ways to restart the negotiations.

One option under consideration by the Obama administration would be to expedite Israeli-Palestinian negotiations over the borders of a future Palestinian state, the diplomat said.

If a deal were to be reached on borders, construction could continue in those areas which would remain under Israeli control. Israel wants to keep major settlement blocs.

(Reporting by Adam Entous and Ori Lewis; Writing by Adam Entous; Editing by Alastair Macdonald)

Old Legal Opinion Raises New Questions
1979 State Dept. Document Found Israeli Settlements 'Inconsistent' With the Law

By Glenn Kessler
Washington Post Staff Writer
Wednesday, June 17, 2009


Thirty years ago, the State Department legal adviser issued an opinion in response to an inquiry from Congress: The establishment of Israeli settlements in occupied Palestinian territories "is inconsistent with international law."

The opinion cited Article 49 of the Fourth Geneva Convention, which states that an occupying power "shall not deport or transfer parts of its own civilian population into the territory it occupies." Israel <http://www.washingtonpost.com/wp-srv/world/countries/israel.html?nav=el>  has insisted that the Geneva Convention does not apply to settlers and broadly contests assertions of the settlements' illegality.

Despite the passage of time, the legal opinion, issued during the Carter administration, has never been revoked or revised. President Ronald Reagan said he disagreed with it -- he called the settlements "not illegal" -- but his State Department did not seek to issue a new opinion.

ZST401-001326

But Secretary of State Hillary Rodham Clinton is unlikely to bring up the U.S. opinion when she meets today with Israeli Foreign Minister Avigdor Lieberman at the State Department. Lieberman lives in a West Bank settlement, Nokdim, that was established in 1982 as a tent encampment of six families and now has more than 800 residents.

Despite repeated inquiries over the past week, State Department spokesmen declined to say whether the 1979 legal opinion is still the policy of the U.S. government.

"The United States does not accept the legitimacy of continued settlements," said State Department spokesman Ian Kelly, echoing President Obama's speech this month in Cairo. Israel has an obligation "to freeze all settlement activity," he added, but he avoided questions about the 1979 legal opinion.

The Obama administration has also declined to answer questions about whether a letter that President George W. Bush issued in 2004 is still the policy of the United States. Bush stated that Israel could expect to keep large settlement blocks in any peace deal.

The administration has preferred to act as if the slate has been wiped clean, but the president's tough stance suggested that the 1979 legal opinion might have new relevance.

"As far as I know, I don't think it has ever been rescinded or challenged by any legal officer of the United States government," said Herbert J. Hansel, the former legal adviser who wrote the opinion. "Ronald Reagan expressed his opinion. But whatever you think of him, he was obviously not a lawyer. It still stands as the only definitive opinion of the U.S. government from a legal standpoint."

Israeli Embassy spokesman Jonathan Peled said the opinion has been overtaken by events. "There have been many developments in the region since the 1970s, including a series of agreements that have stipulated that the issue of settlements will be discussed and resolved in permanent status negotiations with the Palestinians," he said.

Israeli Prime Minister Binyamin Netanyahu, in a speech Sunday, declared the West Bank to be "the land of our forefathers" but noted that "within this homeland lives a large Palestinian community."

Aaron David Miller, a former peace negotiator, said successive U.S. administrations generally have chosen to dance around the question of the legality of settlements. President George H.W. Bush briefly considered declaring the settlements illegal in 1989 after he believed Israeli Prime Minister Yitzhak Shamir had lied to him about a settlement freeze, but he was talked out of doing so by Secretary of State James A. Baker III, according to Miller, at the time a Baker aide.

"Baker thought it was a diversion," and instead, he could pressure Israel on settlements more effectively with diplomatic tools, Miller said.

George J. Mitchell, U.S. special envoy for Middle East peace, said yesterday that the administration is sticking to its demands that Israel halt settlement activity. He dismissed as "highly inaccurate" media reports in Israel that the administration is close to a deal that would allow for "natural growth" of settlements within current boundaries.

Mitchell repeatedly ducked questions about the administration's definition of "natural growth." He said the most common definition he has heard is "babies," but then would not say whether that is the administration's definition. An administration official said later that Mitchell declined to offer a definition because the administration rejects the concept. "You don't define an exception because we are not offering any exceptions," he said.

In his speech Sunday, Netanyahu rejected the demands for a freeze. "We have no intention of building new settlements or of expropriating additional land for existing settlements," he said. "But there is a need to enable the residents to live normal lives, to allow mothers and fathers to raise their children like families elsewhere."

ZST401-001327

From: Stuerenberg Nancy L
Sent: Tuesday, June 09, 2009 3:17 PM
To: Thomas Ward L
Subject: FW: Jun 9-09, 17 coordination
Importance: Low


For your review.


From: Perkins Edwina
Sent: Tuesday, June 09, 2009 3:13 PM
To: Stuerenberg Nancy L
Subject: Jun 9-09, 17 coordination
Importance: Low

**6103**

Edwina O.Perkins

Exempt Organizations of the Internal Revenue Service

Cincinnati, Ohio

513-263-5531 (Phone)

513-263-4540 (Fax)

Edwina.Perkins@irs.gov <mailto:Edwina.Perkins@irs.gov>

ZST401-001328