IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Z STREET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:12-cv-401-KBJ |
| | ) | |
| JOHN KOSKINEN, | ) | |
| IN HIS OFFICIAL CAPACITY AS | ) | |
| COMMISSIONER OF INTERNAL | ) | |
| REVENUE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S BRIEF REGARDING MOOTNESS

# TABLE OF CONTENTS

Introduction................................................................................................................. 1

BACKGROUND ......................................................................................................... 3

I.     Z Street applies for recognition of exempt status ............................................. 3

II.    Proceedings in the United States District Court for the Eastern District of Pennsylvania . 5

III.   The D.C. District Court denies the Defendant's motion to dismiss, the Defendant pursues an interlocutory appeal, and the D.C. Circuit affirms the District Court decision ....... 8

IV.    Status of Z Street's application during the pendency of this action ................................. 8

ARGUMENT:  The Court should dismiss  Z Street's Amended Complaint as Moot.................. 11

I.     Z Street was not subjected to the alleged viewpoint discrimination during the processing of its application or thereafter and will not be subjected to such alleged discrimination in the immediate future ................................................................................................. 12

   A.    Z Street was not subjected to viewpoint discrimination before or after filing suit .... 13

      1.    The two specific allegations of viewpoint discrimination in Z Street's Amended Complaint did not happen to Z Street, and Z Street has not alleged otherwise ................ 14

      2.    Suspending review of Plaintiff's application was neither discriminatory nor within the scope of Z Street's Amended Complaint .................................................................. 14

   B.    Z Street will not be subjected to viewpoint discrimination in the future ................... 15

   C.    No present case or controversy remains in this action ............................................. 16

II.    Z Street cannot obtain declaratory or injunctive relief in the absence of either ongoing or imminent harm ...................................................................................................... 17

   A.    Assuming *arguendo* that Z Street's rights were violated during the processing of its application, the violation has ended and is not likely to recur.............................................. 17

   B.    Z Street's alleged past injury would not be remedied by the award of declaratory or injunctive relief ........................................................................................................... 18

   D.    Z Street's contention that its claims are not moot under *True the Vote* is incorrect as a matter of fact and of law .......................................................................................... 20

III.   Z Street's remaining arguments are unavailing.............................................................. 23

   A.    The TIGTA report is irrelevant to whether this action is moot ................................. 23

i

B.      Mootness is not dependent on whether Z Street has received all the relief it sought. 25

C.      Z Street cannot avoid dismissal by asserting an unpled, futile claim for nominal damages......................................................................................................................... 26

D.      An outstanding claim for attorney's fees and costs is insufficient to preclude an action from becoming moot......................................................................................................... 28

IV.     In the alternative, the Court should enter a scheduling order providing that the parties conclude discovery in no more than 90 days ........................................................................ 29

CONCLUSION.................................................................................................................... 30

# TABLE OF AUTHORITIES

### *Cases*

*Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*,
  317 F.3d 334 (D.C. Cir. 2003) ............................................................................... 17

*Aref v. Holder*,
  953 F. Supp.2d 133 (D.D.C. 2013) .......................................................................... 26

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997).................................................................................................... 27

*Bauer v. Marmara*,
  774 F.3d 1026 (D.C. Cir. 2014) ............................................................................... 13

*Benoit v. U.S. Dep't of Agric.*,
  577 F. Supp.2d 12 (D.D.C. 2008) ............................................................................ 28

*Bowen v. Cheuvront*,
  516 F. Supp.2d 1021 (D. Neb. 2007) ....................................................................... 19

*Budinich v. Becton Dickinson & Co.*,
  486 U.S. 196 (1988).................................................................................................. 29

*Carey v. Piphus*,
  435 U.S. 247 (1978).................................................................................................. 28

*Castro Cty., Tex. v. Crespin*,
  101 F.3d 121 (D.C. Cir. 1996) ........................................................................... 28, 29

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983).................................................................................................... 16

*Clark v. Library of Congress*,
  750 F.2d 89 (D.C. Cir. 1984).................................................................................... 12

*Clarke v. United States*,
  915 F.2d 699 (D.C. Cir. 1990)............................................................................ 21, 22

*Cobell v. Norton*,
  319 F. Supp.2d 36 (D.D.C. 2004) ............................................................................ 29

*Coleman v. Drug Enf't Admin.*,
  134 F. Supp.3d 294 (D.D.C. 2015) .......................................................................... 18

*Davis v. D.C.*,
  158 F.3d 1342 (D.C. Cir. 1998) ......................................................................... 26, 28

*Dearth v. Holder*,
   641 F.3d 499 (D.C. Cir. 2011) ................................................................................... 17

*Dep't of the Army v. Blue Fox, Inc.*,
   525 U.S. 255 (1999) ................................................................................................. 27

*DeSilva v. Donovan*,
   81 F. Supp.3d 20 (D.D.C. 2015) .......................................................................... 17, 18

*Elkins v. District of Columbia*,
   610 F. Supp.2d 52 (D.D.C. 2009) ............................................................................ 28

*F.D.I.C. v. Meyer*,
   510 U.S. 471 (1994)................................................................................................. 27

*Fletcher v. U.S. Dep't of Justice*,
   17 F. Supp.3d 89 (D.D.C. 2014) ............................................................................... 28

*Grant v. Vilsack*,
   892 F. Supp.2d 252 (D.D.C. 2012) ........................................................................... 13

*Haase v. Sessions*,
   835 F.2d 902 (D.C.Cir.1987) ................................................................................... 16

*Hobson v. Wilson*,
   737 F.2d 1 (D.C. Cir. 1984) ..................................................................................... 28

*Holt v. American City Diner*,
   No. 05-1745, 2007 WL 1438489 (D.D.C. May 15, 2007)........................................... 17

*Hubbard v. Adm'r, E.P.A.*,
   982 F.2d 531 (D.C. Cir. 1992) .................................................................................. 28

*Laird v. Tatum*,
   408 U.S. 1 (1972)..................................................................................................... 12

*Lane v. Pena*,
   518 U.S. 187 (1996).................................................................................................. 27

*Lewis v. Cont'l Bank Corp.*,
   494 U.S. 472 (1990).................................................................................................. 29

*Linchpins of Liberty v. United States*,
   71 F. Supp.3d 236 (D.D.C. 2014) .................................................................. 20, 21, 25

*Linchpins of Liberty, et al. v. United States of America, et al.*,
   831 F.3d 551 (2016)..........................................................................................*passim*

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................ 13

*Matthews v. D.C.,*
    675 F. Supp.2d 180 (D.D.C. 2009) ............................................................... 26

*Nat'l Sec. Counselors v. C.I.A.,*
    931 F. Supp.2d 77 (D.D.C. 2013) ................................................................. 16

*Overby v. National Ass'n of Letter Carriers,*
    595 F.3d 1290 (D.C. Cir. 2010) .................................................................... 19

*Qassim v. Bush,*
    466 F.3d 1073 (D.C. Cir. 2006) .................................................................... 22

*Regan v. Taxation with Representation of Washington,*
    461 U.S. 540 (1983) .......................................................................................... 4

*Simon v. Eastern Ky. Rights Org.,*
    426 U.S. 26 (1976) .................................................................................... 13, 14

*Tipograph v. Dep't of Justice,*
    146 F. Supp.3d 169 (D.D.C. 2015) ................................................. 11, 16, 18

*True the Vote, Inc. v. Internal Revenue Serv.,*
    71 F. Supp.3d 219 (D.D.C. 2014) ........................................................... 20, 25

*Ukrainian-Am. Bar Assoc., Inc. v. Baker,*
    893 F.2d 1374 (D.C. Cir. 1990) .................................................................... 22

*United States v. Crinel,*
    No. 15-61, 2016 WL 6441249 (E.D. La. Nov. 1, 2016) ............................. 5, 6

*United States v. Meraz,*
    No. 15-50262, 2016 WL 6407431 (9th Cir. Oct. 31  2016) ........................... 5

*United States v. Sherwood,*
    312 U.S. 584 (1941) ....................................................................................... 27

*Yniguez v. State,*
    975 F.2d 646 (9th Cir. 1992) ........................................................................ 26

*Z Street v. Koskinen,*
    44 F. Supp.3d 48 (D.D.C. 2014) ............................................................... 8, 27

*Z Street v. Koskinen,*
    791 F.3d 24 (D.C. Cir. 2015) .......................................................................... 8

### *Statutes*

5 U.S.C. § 702 ............................................................................................................ 7, 28

26 U.S.C. § 501 ............................................................................................................ *passim*

26 U.S.C. § 7428 .......................................................................................................... *passim*

28 U.S.C. § 2412 .......................................................................................................... 28

### *Rules*

Fed. R. Civ. P. 26 ........................................................................................................ 29

Fed. R. Civ. P. 54 ........................................................................................................ 28

Fed. R. Evid. 801 ......................................................................................................... 5

### *Other*

Rev. Proc. 2010-9 § 4.04, 2010 WL 56880 (Jan. 11, 2010) .................................... 2, 8, 15

Rev. Proc. 69-3 § 3.03, 1969 WL 17197 (Jan. 6, 1969) ......................................... 8

Rev. Rul. 63-252, 1963-2 C.B. 101 ......................................................................... 4

Rev. Rul. 66-79, 1966-1 C.B. 48 .............................................................................. 4

**INTRODUCTION**

This action is moot because the Internal Revenue Service (IRS or Service), on October 19, 2016, granted Z Street's application for recognition of exempt status and, therefore, no present controversy remains.  As a threshold matter, Z Street lacks standing to continue to challenge an Israel Special Policy that, even if it existed, was not applied to Z Street and has no more than a speculative chance of being applied to Z Street in the future.  Likewise, Z Street cannot continue an action seeking declaratory and injunctive relief when it has, at most, suffered a past injury rather than an ongoing or imminent injury.  In the absence of a justiciable controversy, no further relief can be awarded and the Court should dismiss Z Street's Amended Complaint.  If this action is not dismissed, the Court should set a discovery deadline to cabin a discovery process that has been ongoing for over a year.

Z Street filed suit alleging that the Service had a policy regarding how to process applications for recognition of exempt status connected to the filing organization's viewpoint regarding Israel, and that the policy was unconstitutional.  (Dkt. 10, Am. Compl. ¶ B.)  Z Street sought, *inter alia*, an injunction barring the Service from applying the alleged policy to its application and requiring that its application be processed in a different manner.  (*Id.*, Prayer for Relief ¶¶ A-B.)  On October 19, 2016, the Service issued a letter to Z Street granting its application for recognition of exempt status.  (Dkt. 99-1, 11/11/2016 Lori Lowenthal Marcus Decl. ¶ 8, Exs. 2-3.)  Following the issuance of that letter, the Court issued an order directing Z Street to show cause why its Amended Complaint for declaratory and injunctive relief should not be dismissed as moot.  (10/20/2016 Minute Order.)  Z Street's filing has failed to do so, and its Amended Complaint should be dismissed for two independent reasons.

*First*, Z Street only has standing to challenge policies that were actually applied to it or are likely to be applied to it in the immediate future, neither of which it can do.  According to Z

Street's Amended Complaint, the "Israel Special Policy" to which it could have been subjected involved: (a) sending organizations' applications from the IRS Office in Cincinnati, Ohio, "to a special unit in the [Washington,] D.C. office to determine whether the organization's activities contradict the [Obama] Administration's public policies"; and/or (b) asking organizations about their beliefs toward Israel during the application process.  (Am. Compl. ¶¶ B, H.)  But at no time did the Service send Z Street's application to Washington, D.C., for processing or ask Z Street about its beliefs toward Israel.  Because Z Street was not subjected to the alleged policy it seeks to challenge (a policy the Defendant denies existed then or now), and now has no likelihood of being subjected to such an alleged policy in the immediate future, there is no present controversy and the case is moot.

Separate and apart from the allegations in its Amended Complaint, Z Street also claims that it was subjected to viewpoint discrimination because, after Z Street filed suit, the Service suspended the processing of its application pursuant to a longstanding revenue procedure (Dkt. 99, Pl.'s Mem. 4), which provides that "[a] determination letter or ruling on exempt status will not ordinarily be issued if an issue involving the organization's exempt status under § 501 or § 521 is pending in litigation . . ."  Rev. Proc. 2010-9 § 4.04, 2010 WL 56880 (Jan. 11, 2010).  By its express terms, however, this revenue procedure is viewpoint neutral and wholly unrelated to an applicant's viewpoint about or connection with Israel, or any other ideals.  Moreover, given Z Street's allegation that processing its application under existing IRS policy would violate its First Amendment rights (Am. Compl. ¶ B), and Z Street's request for an injunction against use of that policy (*id.*, Prayer for Relief ¶¶ A-B), the Defendant proposed that the parties negotiate a consent order setting forth an agreed-upon procedure to process the application.  (Dkt. 82, J. Report and

Disc. Plan 3; Dkt. 89, 12/17/2015 Status Conf. Tr. 3:8-4:2.)  Z Street declined to negotiate such a

consent order.  (J. Report and Disc. Plan 3; 12/17/2015 Status Conf. Tr. 4:5-16.)

*Second*, in an action requesting injunctive or declaratory relief, a plaintiff can only

establish a present controversy if it demonstrates an imminent, future violation of its rights—not

merely a past violation.  Assuming *arguendo* that Z Street was subjected to an "Israel Special

Policy" during the processing of its application and that the policy violated its First Amendment

rights, the violation of Z Street's rights has ended and is not likely to recur in the immediate

future.  Again, the result is that there is no present controversy and the case is moot.

Z Street attempts to avoid dismissal and variously claims that this action is not moot by:

citing a report issued over three years ago by the Treasury Inspector General for Tax

Administration (TIGTA); arguing that it has not received all the relief requested in its Amended

Complaint; asserting a belated, futile claim for nominal damages; and asserting that it may still

be entitled to attorney's fees and costs if it were to prevail on the merits.  (Pl.'s Mem. 3, 5-6, 8-

14.)  As discussed below, these arguments do not withstand scrutiny.

## BACKGROUND

### I.     Z Street applies for recognition of exempt status

In December 2009, Z Street submitted an application for recognition of exempt status.

(11/30/2016 Jeffrey I. Cooper Decl. ¶ 8, Ex. A at 1 (filed herewith).)  In its application, Z Street

stated that it had, was presently, or intended to, *inter alia*, engage in lobbying and attempt to

influence legislation, including engaging in advocacy activities to influence legislation that

would provide resources to the State of Israel.  (Cooper Decl. ¶ 8, Ex. A at 6, 11, 21-22, 28; *but*

*see* Am. Compl. ¶ 20 (alleging that "none of Z STREET's purposes can be accomplished through

legislative action").)  Z Street further stated that it had, was presently, or intended to, *inter alia*,

provide resources to nonprofit organizations, government agencies, and other institutions.

(Cooper Decl. ¶ 8, Ex. A at 11, 29; *but see* Am. Compl. ¶ 8 ("Z STREET has never funded any activities of any other entity").)

Z Street's application was assigned to an IRS agent in Cincinnati, Ohio.  (Cooper Decl. ¶ 8, Ex. A at 69-73.)  In May 2010, that agent sent Z Street a letter requesting additional information, which focused on Z Street's lobbying and advocacy activities.  (Cooper Decl. ¶ 8, Ex. A at 69-73 and ¶ 9.)  According to a document produced by Z Street, that agent spoke with Z Street's counsel in July 2010 and admitted that she did not have much familiarity or experience with applications involving lobbying[1] or a connection to Israel. [2]  (Klimas Decl. ¶ 2, Ex. A at 4.) That agent allegedly also stated that the Service was carefully scrutinizing applications connected with Israel in any way.  (Am. Compl. ¶ 24.)  Furthermore, she allegedly stated that the Service was sending many such applications to a special unit in Washington, D.C., to determine if the applicants' activities contradicted the administration's public policies.  (*Id.* ¶ 25.) According to a document produced by Z Street, in a subsequent phone call in July 2010, that

---

[1] The Service has a valid interest in subjecting to higher scrutiny applicants who propose to engage in lobbying or advocacy, in order to ensure that the organization will comply with the restrictions imposed by law.  *See Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 545-50 (1983) (statutory restrictions on lobbying by tax-exempt organizations do not violate the First Amendment).

[2] The Service has a valid interest in subjecting to higher scrutiny applicants who propose to send money or resources to countries identified by the U.S. State Department as having a high risk of terrorism, in order to ensure that the organization will maintain procedures to prevent resources from being used to support terrorism.  *See* I.R.C. § 501(p) (providing for the suspension of tax-exempt status for terrorist organizations); Rev. Rul. 63-252, 1963-2 C.B. 101 (organizations created in the United States but operated solely to solicit earmarked funds on behalf of pre-existing foreign entities are in effect domestic agents or conduit organizations with respect to foreign beneficiaries and do not qualify for tax-deductibility of donations); Rev. Rul. 66-79, 1966-1 C.B. 48 (an organization created in the United States that solicits contributions in the United States for a specific project of a foreign counterpart organization will qualify for tax-deductible contributions where the domestic charity has reviewed and approved the project as being in furtherance of its own exempt purposes and has full control and discretion as to the use of the contributions).

agent informed Z Street's counsel that its application would not be transferred to Washington, D.C., but rather transferred to another agent in Cincinnati.  (Klimas Decl. ¶ 2, Ex. A at 4.) According to another document produced by Z Street, in August 2010, Z Street's counsel spoke with the second agent's manager, Jon Waddell, who confirmed that the application would not be transferred to Washington, D.C., and would remain in Cincinnati.  (*Id.* ¶ 3, Ex. B 2.)  According to the same document, Waddell also stated that he did not anticipate any problems and that the Service might be able to finish processing the application without any additional information from Z Street.  (*Id.*)[3]

## II.   Proceedings in the United States District Court for the Eastern District of Pennsylvania

Later in August 2010—approximately one month before it could have filed suit under I.R.C. § 7428 seeking a determination that it was entitled to exempt status—Z Street filed a Complaint in the United States District Court for the Eastern District of Pennsylvania.  (Dkt. 1, Compl.)  In its Complaint, Z Street alleged that the Service had a policy of applying especially intense scrutiny to all applications connected with Israel, apparently without regard to viewpoint. (Compl., Intro.)  Z Street further alleged that the Service was sending many such applications to Washington, D.C., to determine whether the organizations' viewpoints aligned with the Obama administration's viewpoint.  (*Id.*)  Z Street alleged that this so-called "Israel Special Policy," in which the Service delayed and potentially denied applications based on the organizations'

---

[3] The Defendant cites to selected portions of documents produced by Z Street as party admissions.  Fed. R. Evid. 801(d)(2).  If Z Street seeks to rely on those same documents, the Defendant reserves the right to object to them on grounds including hearsay.  *See United States v. Meraz*, No. 15-50262, 2016 WL 6407431, at *1 (9th Cir. Oct. 31  2016) (citations omitted) (allowing Government to introduce partial statement made by defendant as a party admission without allowing the defendant to introduce the remainder of the statement, which was hearsay to which no exception applied); *United States v. Crinel*, No. 15-61, 2016 WL 6441249, at *1-2 (E.D. La. Nov. 1, 2016) (citations omitted) (same).

viewpoints, constituted viewpoint discrimination in violation of the First Amendment.  (*Id.*)

Z Street sought a declaratory judgment that the Israel Special Policy was unconstitutional.  (*Id.*,

Prayer for Relief.)  Z Street also sought injunctive relief: (1) an injunction barring the Service

from applying the Israel Special Policy to its application; (2) an injunction requiring that its

application be processed in a different manner; and (3) an injunction requiring the Service to

publicly disclose the origin, development, approval, substance, and application of the Israel

Special Policy.  (*Id.*, Prayer for Relief ¶¶ A-C.)  Additionally, under the heading of injunctive

relief, Z Street sought attorney's fees, costs, and "[s]uch other and further relief as the Court may

deem proper."  (*Id.*, Prayer for Relief ¶¶ D-E.)

The Defendant moved to dismiss Z Street's Complaint and argued that: (i) the suit was

barred by sovereign immunity; (ii) awarding equitable relief was inappropriate because Z Street

had an adequate remedy at law, including a suit under I.R.C. § 7428; and (iii) the requested relief

was barred by the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act.

(Dkt. 4, Mot. to Dismiss.)  Z Street opposed the Defendant's motion.  (Dkt. 5, Opp'n.)  In

responding to the Defendant's sovereign immunity argument, Z Street emphasized that it sought

only equitable relief and "does not seek money damages from anyone—not from the United

States, or the IRS, or from any agent personally in a *Bivens* action."  (*Id.* at 9.)

Before the Court ruled on the Defendant's motion to dismiss, Z Street amended its

Complaint.  (Am. Compl.)  In all respects but one, the Amended Complaint was substantively

identical to the original Complaint, including a prayer for relief that was word-for-word

identical.  (*Id.*)  The Amended Complaint differed from the original Complaint only insofar as it

attached an incomplete, partially redacted letter that an IRS agent allegedly sent to an unnamed

organization that had applied for recognition of exempt status.  (*Id.* ¶¶ 37-39, Ex. A.)  The letter

asked the organization whether it supported the existence of Israel, and asked the organization to

describe its religious belief system toward Israel.  (*Id.*, Ex. A.)  Z Street alleged that the letter

was a second manifestation of the Israel Special Policy.[4]  (*Id.* ¶ 37.)

     The Defendant moved to dismiss Z Street's Amended Complaint on the same three

grounds on which it had moved to dismiss the original Complaint.  (Dkt. 19, Mot. to Dismiss.)

Z Street opposed the Defendant's motion.  (Dkt. 21, Opp'n.)  In responding to the Defendant's

sovereign immunity argument, Z Street argued that the Administrative Procedure Act waived the

Defendant's immunity from suit.  (*Id.* at 2, 8.)  Specifically, Z Street directed the Court to

Section 702, which waives sovereign immunity for certain actions "seeking relief other than

money damages."  (*Id.* (citing 5 U.S.C. § 702).)

     After briefing on the second motion to dismiss had closed, the Court entered an order

construing the action "as a controversy arising under 26 U.S.C. § 7428" and transferring it to the

District of Columbia.  (Dkt. 28, Order.)

---

[4] Z Street's Amended Complaint makes passing reference to the fact that the Service: (a) sent Z Street's application to the Touch-and-Go (TAG) Group, which was based in Cincinnati and no longer exists; and (b) requested information about Z Street's officers and directors.  (Am. Compl., Introduction ¶ F, ¶¶ 16, 40.)  Z Street fails to connect these references to its broader allegations of an Israel Special Policy, and neither reference supports the inference that Z Street's application was delayed based on its viewpoint.  With respect to the former, Z Street did not allege that the Cincinnati-based TAG Group, as opposed to the alleged "special unit in the D.C. office," was tasked with inquiring into organizations' viewpoints.  With respect to the latter, organizations applying for exempt status are required to provide information about their officers and directors.  (Cooper Decl. ¶ 8, Ex. A at 8.)  The Service simply asked Z Street to provide the officers and directors' resumes to supplement the information it had already provided; Z Street stated that its officers and directors did not have updated resumes, and it referred the Service back to the information contained in its initial submission.  (*Id.* ¶ 8, Ex. A at 30-32, 69-76 and ¶ 9.)

**III.    The D.C. District Court denies the Defendant's motion to dismiss, the Defendant pursues an interlocutory appeal, and the D.C. Circuit affirms the District Court decision**

The Court denied the Defendant's motion to dismiss.  (Dkt. 49, Mem. Op.)  In relevant part, the Court accepted Z Street's argument that this suit fell within Section 702's waiver of sovereign immunity because Z Street sought "only declaratory and injunctive relief," not monetary damages.  *Z Street v. Koskinen*, 44 F. Supp.3d 48, 62-65 (D.D.C. 2014).  The Defendant obtained leave to pursue an interlocutory appeal.  (Dkt. 74, Order.)

On appeal, Z Street once again asserted that the section 702 of the Administrative Procedure Act waived the Defendant's immunity from suit.  (*Z Street v. Koskinen*, No. 15-5010 (D.C. Cir.), Mar. 20, 2015 Appellee Br. 18.)[5]  The D.C. Circuit agreed with Z Street and this Court and held that this action falls within Section 702's waiver of sovereign immunity because Z Street was seeking only nonmonetary relief.  *Z Street*, 791 F.3d at 32.

**IV.    Status of Z Street's application during the pendency of this action**

After Z Street filed suit, the Service suspended its processing of the application.  This was consistent with Rev. Proc. 2010-9 § 4, 2010 WL 56880 (Jan. 11, 2010), a longstanding, viewpoint neutral procedure providing that "[a] determination letter or ruling on exempt status will not ordinarily be issued if an issue involving the organization's exempt status under § 501 or § 521 is pending in litigation . . ."  *Accord* Rev. Proc. 69-3 § 3.03, 1969 WL 17197 (Jan. 6, 1969).  It was also consistent with the Defendant's position that this suit should have been filed as a declaratory judgment action under I.R.C. § 7428 if the Service had

---

[5] At oral argument, Z Street abandoned its claim that the Israel Special Policy resulted in the Service potentially denying its application and stated that its only claim was that the policy delayed its application based on viewpoint.  *Z Street v. Koskinen*, 791 F.3d 24, 31 (D.C. Cir. 2015) (citing Oral Arg. Rec. 41:57-42:57, 51:14-38) ("The 'only thing we're suing about,' Z Street's counsel told us at oral argument, 'is delay.'").

not, within 270 days of Z Street's application being submitted, made a final determination on it. I.R.C. § 7428(a)(2), (b)(2); (Dkt. 38, Def.'s Second Supp. Mem. 10; Dkt. 44, 7/19/2013, Hearing Tr. 14:16-16:12; *cf.* Dkt. 28, Order (construing the instant suit "as a controversy arising under 26 U.S.C. § 7428" and transferring it to the District of Columbia).)

On remand, the Defendant proposed that the parties negotiate, either directly counsel-to-counsel, or with the assistance of a third-party neutral, a consent order providing "a fair and constitutionally sound procedure acceptable to the Plaintiff that the IRS could use to evaluate Plaintiff's application for recognition of exemption under section 501(c)(3) of the Internal Revenue Code." (J. Report and Disc. Plan 3; 12/17/2015 Status Conf. Tr. 3:8-4:2.) Z Street declined to engage in any negotiations on this issue. (J. Report and Disc. Plan 3; 12/17/2015 Status Conf. Tr. 4:5-16.) Z Street subsequently sent the Defendant a letter averring that the Service's failure to process its application during the pendency of this litigation constituted "impermissible discrimination" (Dkt. 98, Notice, Ex. A)—even as Z Street complained that processing the application under existing Service policy would violate its First Amendment rights, sought an injunction requiring that the application be processed in a different manner, and declined to negotiate with the Defendant to arrive at an agreed-upon procedure to process the application.

On August 5, 2016, the D.C. Circuit issued a decision in *True the Vote, Inc. v. Internal Revenue Serv., et al.* and *Linchpins of Liberty, et al. v. United States of America, et al.*, 831 F.3d 551 (2016). In light of that decision, the Service decided that it would process the applications of litigants whose applications remain pending. (Notice, Ex. B.) The Service informed the undersigned attorneys that it would also review Z Street's application, and the Defendant

informed Z Street's counsel of that fact in a letter dated August 16, 2016.  (Id.)[6]  Based on its

review of Z Street's application using current procedures, (e.g., I.R.M. 7.20.2 (last revised

Oct. 22, 2015)), the Service determined that Z Street was exempt from federal income tax under

section 501(c)(3) of the Internal Revenue Code.  (11/11/2016 Lori Lowenthal Marcus Decl. ¶ 8,

Exs. 2-3.)

During the time that Z Street's application was pending, Z Street was free to continue

operating and treat itself as exempt from federal income tax under I.R.C. § 501(c)(3).

https://www.irs.gov/charities-non-profits/charitable-organizations/contributions-to-organization-

with-irs-application-pending (last visited Nov. 21, 2016).  Z Street purportedly chose not to

solicit contributions, however, because it "felt it was inappropriate to raise money when our tax

exempt status was in limbo."  (Klimas Decl. ¶ 5, Ex. C at 1; *but see* 11/11/2016 Lori Lowenthal

Marcus Decl. ¶ 6 ("The IRS's decision to freeze processing of Z STREET's application made it

impossible for Z STREET to engage in fundraising.").)

At no time did the Service transfer Z Street's application to Washington, D.C., for

processing, and Z Street did not allege otherwise in its original or Amended Complaint.  (Cooper

Decl. ¶ 10.)  At no time did the Service ask Z Street any questions about Israel, much less Z

Street's beliefs toward Israel, and Z Street did not allege otherwise in its original or Amended

Complaint.  (*Id.* ¶ 8, Ex. A at 69-73 and ¶ 9. )  The Defendant continues to deny that the so-

called Israel Special Policy exists.

---

[6] Z Street asserts that "[a]pparently" one of the two pending applications addressed by the
D.C. Circuit belongs to Z Street.  (Pl.'s Mem. 5.)  The D.C. Circuit made clear, however, that the
two pending applications belonged to parties to that litigation.   *True the Vote*, 831 F.3d at 563
("two of the appellant-plaintiffs' applications remain pending").

**ARGUMENT:**
**THE COURT SHOULD DISMISS**
**Z STREET'S AMENDED COMPLAINT AS MOOT**

Since the Service granted Z Street's application for recognition of exempt status, there has been a significant shift in the scope of this case and the relationship of the parties. Specifically, this case is now only about what actually happened to Z Street's application—not what will likely happen to it in the future.  Because Z Street cannot establish that it has standing to proceed, and because the case is moot, the Court should dismiss it:[7]

*First*, Z Street has neither alleged nor put forth any evidence that the Israel Special Policy, even if one existed, was applied to it.  Z Street has likewise failed to put forth any evidence that the Service's longstanding, viewpoint neutral policy of suspending its review of applications after litigation has commenced was either a further manifestation of the alleged Israel Special Policy or otherwise discriminatory.  And because Z Street's application has been granted, it is unlikely that Z Street will be subjected to the alleged Israel Special Policy or a similar litigation hold in the future.  Therefore, Z Street's claims are now moot and it has no further standing to continue its challenge.

*Second*, because Z Street no longer has a pending application and there is no reasonable likelihood that it would have the opportunity or need to submit another application in the future, Z Street lacks a present controversy sufficient to justify seeking declaratory or injunctive relief

---

[7] The doctrines of standing and mootness are closely intertwined.  *See, e.g., Tipograph v. Dep't of Justice*, 146 F. Supp.3d 169, 174–77 (D.D.C. 2015) (claim against agency for failure to properly respond to a Freedom of Information Act (FOIA) request was rendered moot by the agency's release of records; the plaintiff's claim for injunctive relief with respect to a the agency's processing of future FOIA requests, however, failed for lack of standing rather than mootness).  Because of the close connection between the two doctrines, as well as the fact that applying one doctrine or the other does not change the result here, the Defendant does not further attempt to distinguish between the two.

11

regarding the Service's processing of applications.  Z Street's reliance on the D.C. Circuit's

opinion in *True the Vote*, in which the litigants continued to have outstanding applications, is

therefore unavailing.

     *Third*, Z Street's four remaining arguments relate to ancillary issues and cannot salvage a

case that is fundamentally moot.  The TIGTA report cited by Z Street is irrelevant; whether Z

Street has received all the relief requested in its Amended Complaint is irrelevant; Z Street

cannot defeat mootness by belatedly asserting an unpled claim for nominal damages that is

barred by sovereign immunity; and Z Street's request for attorney's fees and costs is a post-

judgment matter that does not impact whether the merits of this case are moot.

     *Finally*, if this action is not dismissed, the Court should enter a scheduling order

providing that the parties conclude discovery, which has been ongoing for over a year, in no

more than 90 days.

## I.    Z Street was not subjected to the alleged viewpoint discrimination during the processing of its application or thereafter and will not be subjected to such alleged discrimination in the immediate future

     Z Street's claims are moot, and it lacks standing to further pursue this litigation, because

it was not subject to viewpoint discrimination in the processing of its application—either pre-suit

in the manner described in its Complaint and Amended Complaint or in some other manner

thereafter.  And now that its application has been granted, Z Street will not be subject to such

discrimination with respect to its application in the future.

     It is axiomatic that a plaintiff only has standing under Article III to challenge a policy that

was applied to it (or is likely to be applied to it in the future), not a policy that merely has been

(or is likely to be) applied to others.  *See Clark v. Library of Congress*, 750 F.2d 89, 92-93 (D.C.

Cir. 1984) (discussing *Laird v. Tatum,* 408 U.S. 1 (1972)).  To establish standing, a plaintiff must

present a live controversy at the time it files suit and maintain a live controversy throughout the

proceeding. *True the Vote*, 831 F.3d at 555; *Grant v. Vilsack*, 892 F. Supp.2d 252, 256 (D.D.C. 2012) (citations omitted) (". . . a plaintiff must demonstrate that a case or controversy exists at all stages of the litigation").  And because standing is a "threshold jurisdictional requirement," a court may not assume standing in order to proceed to evaluate a case on the merits.  *Bauer v. Marmara*, 774 F.3d 1026, 1031 (D.C. Cir. 2014).  The burden to establish standing rests plainly on the plaintiff.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

As the Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements."  *Lujan,* 504 U.S. at 560.  To have standing, a plaintiff must suffer "an 'injury in fact'—an invasion of a legally protected interest"—which is concrete and particularized, as well as actual or imminent.  *Id.*  In addition, "there must be a causal connection between the injury and the conduct complained of."  *Id.* (quoting *Simon v. Eastern Ky. Rights Org.*, 426 U.S. 26, 41–42 (1976)).  Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (quoting *Simon*, 426 U.S. at 38, 43).

### A.      Z Street was not subjected to viewpoint discrimination before or after filing suit

As an initial matter, Z Street cannot show that it suffered an injury due to any alleged actions by the IRS or its employees.  The crux of Z Street's allegations is that its First Amendment rights were violated because 1) an IRS agent allegedly told Z Street that the IRS would apply to Z Street's application for tax exempt status an unconstitutional policy that inappropriately takes into account an organization's viewpoint and, 2) after Z filed its Complaint, the IRS froze the processing of its application.   However, Z Street did not allege, and discovery does not support, the conclusion that the policy described in Z Street's Amended Complaint was actually applied by the IRS to Z Street's application.  Likewise, Z Street did not plead that post-

Complaint treatment of its application violates the First Amendment nor can it show that the IRS's decision to do so based on a viewpoint neutral policy constitutes unconstitutional discrimination. As such, Z Street cannot show that it will suffer a future injury on the basis of such plainly deficient allegations, and no case or controversy remains in this action.

**1. The two specific allegations of viewpoint discrimination in Z Street's Amended Complaint did not happen to Z Street, and Z Street has not alleged otherwise**

According to Z Street's Amended Complaint, the "Israel Special Policy" involved: (a) sending organizations' applications from the IRS Office in Cincinnati, Ohio, "to a special unit in the [Washington,] D.C. office to determine whether the organization's activities contradict the [Obama] Administration's public policies"; and/or (b) asking organizations about their beliefs toward Israel during the application process. (Am. Compl. ¶¶ B, H.)

Z Street did not, however, allege specific facts showing that either of these things ever happened to its application. Moreover, documents Z Street has since produced in discovery show that it could not have made such allegations, because it knew at the time it filed suit that the Service had neither sent its application to a special unit in Washington, D.C. (Klimas Decl. ¶¶ 2-3, Ex. A at 4, Ex. B at 2), nor asked about its beliefs toward Israel. (Cooper Decl. ¶ 8, Ex. A at 69-73, ¶¶ 9 and 10.) And finally, Z Street's exempt status has now been recognized by the Service, without either the application being transferred to Washington, D.C., or Z Street being asked about its beliefs toward Israel. (*Id*.)

**2. Suspending review of Plaintiff's application was neither discriminatory nor within the scope of Z Street's Amended Complaint**

Z Street suggests that the Service's decision to suspend its review of Z Street's application during the pendency of this litigation amounts to viewpoint discrimination, but that suggestion is without merit. (Pl.'s Mem. 2, 4, 8, 14.) Initially, application of a facially neutral

policy, such as Rev. Proc. 2010-9, does not constitute viewpoint discrimination.  The revenue

procedure calls for suspensions to be made "ordinarily," 2010 WL 56880, and Z Street has not

pointed to any evidence that would indicate that the IRS viewed this situation as anything other

than ordinary.

Z Street's claim is outside the scope of the allegations of its Amended Complaint because

the revenue procedure is wholly unconnected with Israel; in fact, Z Street's own cited authority

shows that this revenue procedure was similarly applied in cases with no connection to Israel.

*See True the Vote*, 831 F.3d at 561-62; *Norcal Tea Party Patriots v. Internal Revenue Serv.*, No.

1:13-cv-00341 (S.D. Ohio), slip. op. at 22 (Pl.'s Mem. Ex. B).

Moreover, even if the Service should not have suspended review of Plaintiff's

application, that does not transform the mistaken application of the revenue procedure into a

constitutional violation.  Z Street's suggestion to the contrary should be filtered through the

factual lens present here, namely that the evidence before the Court shows that the alleged Israel

Special Policy was not applied to Z Street.  As a result, Z Street cannot credibly contend that the

application of the revenue procedure was a continuation of earlier unconstitutional conduct.

### B.  Z Street will not be subjected to viewpoint discrimination in the future

Now that the Service has granted Z Street's application for recognition of exempt status,

Z Street is entitled to rely on that recognition and hold itself out as exempt unless and until its

status is revoked for failure to comply with the relevant sections of the Internal Revenue Code.

Multiple additional speculative events, including some outside of the control of the IRS,

would have to occur before another Z Street application would ever be subject to IRS review.  If

the Service were to revoke its recognition of Z Street's exempt status, Z Street would have the

opportunity to contest that revocation both administratively and in federal court.  *See* I.R.C.

§ 7428(a)(1), (b)(2) (an organization can seek administrative and judicial review of the Service's

determination with respect to the organization's "initial qualification or continuing qualification" for exempt status).  If a district court, the Tax Court, and/or a court of appeals affirmed the revocation, only then would Z Street even have the opportunity to again apply for recognition of exempt status.

### C.  No present case or controversy remains in this action

In sum, Z Street has never been subjected to the alleged Israel Special Policy and is unlikely to be subjected to the alleged policy in the future.  Accordingly, any threat to Z Street cannot be either "real and immediate," or, alternatively, "realistic[ ]" in nature.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Nat'l Sec. Counselors v. C.I.A.*, 931 F. Supp.2d 77, 91–92 (D.D.C. 2013); *accord Haase v. Sessions*, 835 F.2d 902, 910–11 (D.C.Cir.1987) (quoting *Lyons*, 461 U.S. at 109) (a plaintiff challenging an alleged policy or practice of a government agency must demonstrate that it is "'realistically threatened by a repetition of [its] experience'").

To the contrary, a scenario in which Z Street could be subjected to the alleged policy is speculative and conjectural, and thus does not give rise to a present case or controversy sufficient to establish standing.  *See Lyons*, 461 at 111 (holding that a plaintiff subjected to an arrest-related chokehold lacked standing to enjoin police from using chokeholds because there was not a likelihood of future harm from the same injury-causing conduct); *Haase*, 835 F.2d at 911 (to establish a "threat of repetition," a plaintiff must not only show that a policy exists but that he is "likely to be subjected to the policy again"); *Tipograph,* 146 F. Supp.3d at 174–75 (D.D.C. 2015) (after receiving records responsive to the FOIA request at issue, plaintiff lacked standing to challenge the agency's alleged policy regarding processing of FOIA requests; although the requester claimed she intended to make future FOIA requests, she provided only "generalized plans to file unspecified requests for information at some uncertain point in the future").

16

Accordingly, to the extent that Z Street had standing to bring this case in the first instance, it no longer does and the case is moot.

## II.   Z Street cannot obtain declaratory or injunctive relief in the absence of either ongoing or imminent harm

Due to its lack of an ongoing or potential future injury and unlike the circumstances in *True the Vote*, Z Street can only seek redress for an alleged past injury, which this Court cannot remedy with injunctive or declaratory relief.

A plaintiff seeking declaratory or injunctive relief cannot establish a present controversy by pointing to a past injury. *DeSilva v. Donovan*, 81 F. Supp.3d 20, 24 (D.D.C. 2015) (citing *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011)); *Holt v. American City Diner*, No. 05-1745, 2007 WL 1438489, at *4 (D.D.C. May 15, 2007) (citing *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003)). To avoid dismissal based on mootness or lack of standing, a plaintiff seeking such relief must instead make "a demonstration of imminent, future injury." *Holt,* 2007 WL 1438489, at *4. In this vein, ongoing effects of a past injury are insufficient to justify invocation of the court's equitable jurisdiction. *DeSilva*, 81 F. Supp.3d at 24-25. Instead, plaintiffs must demonstrate that, absent declaratory or injunctive relief, the defendant's "actions or inactions threaten to injure them again." *See id.* at 25. Z Street has not, and cannot, do so here.

### A.   Assuming *arguendo* that Z Street's rights were violated during the processing of its application, the violation has ended and is not likely to recur

Now that Z Street's application is no longer pending, any delay in processing that application cannot be considered an ongoing injury. And, as discussed in Section I., *supra*, any future injury to Z Street from the alleged Israel Special Policy depends on the occurrence of a series of speculative and conjectural events, including: Z Street's failure to comply with the

17

relevant sections of the Internal Revenue Code; the Service's revocation of Z Street's exempt

status; Z Street's unsuccessful challenges to that revocation at the administrative and judicial

levels; Z Street's reapplication for recognition of exempt status; the Service's continued

processing of applications pursuant to the alleged Israel Special Policy at the time of Z Street's

reapplication; and the Service's decision to subject Z Street's new application to the alleged

policy at that time.

This is precisely the type of hypothetical future injury for which a court lacks jurisdiction

to award declaratory and injunctive relief. *See, e.g., Lyons*, 461 at 111; *Tipograph*, 146 F.

Supp.3d at 174–75; *Coleman v. Drug Enf't Admin.*, 134 F. Supp.3d 294, 306 (D.D.C. 2015)

(holding that when a plaintiff has no pending FOIA requests with an agency and has not averred

that he intends "to make FOIA requests to the [agency] in the future," any "claim of future injury

is simply too speculative and remote to give him standing" to challenge the agency's policies).

### B.      Z Street's alleged past injury would not be remedied by the award of declaratory or injunctive relief

The rationale for courts not issuing declaratory or injunctive relief in the absence of an

ongoing or imminent injury is that such relief will not redress any past injury in a legally

significant way. *DeSilva*, 81 F. Supp.3d at 24-27 (citations omitted). Because redressability is

an essential prerequisite to standing, its absence requires dismissal. *Id.* As discussed below,

none of the declaratory or injunctive relief requested in Z Street's Amended Complaint would

redress any past delay caused by the alleged Israel Special Policy, further illustrating the

inappropriateness of allowing Z Street to continue pursuing it.

*First,* Z Street seeks a declaratory judgment that the alleged policy was unconstitutional.

(Am. Compl., Prayer for Relief.) But simply declaring that the Service violated Z Street's rights

in the past does nothing to alter the present legal relationship between Z Street and the

Defendant, absent a pending application or a likely reapplication.  *Second,* Z Street seeks an injunction barring the Service from applying the alleged policy to Z Street's application and requiring that the Service process the application in a different manner.  (*Id.*, Prayer for Relief ¶¶ A-B.)  But regardless of whether Z Street's application was subjected to the alleged policy in the past, Z Street currently has no tax-exempt application pending before the Service and is unlikely to have the need to submit another such application.  Consequently, any injunction requiring that the Service process or not process Z Street's application in a particular way would be of no legal effect.  *Finally,* Z Street seeks an injunction requiring that the Service disclose information about the alleged policy.  (*Id.*, Prayer for Relief ¶ C.)  But given that Z Street's application has now been granted, disclosure of how its application—or other applications connected with Israel in some way—was/were processed would do nothing to alter the legal relationship between Z Street and the Defendant.[8]

---

[8] The Defendant previously produced to Z Street all non-privileged documents showing how the Service processed Z Street's application before Z Street filed suit, including waiving the deliberative process privilege for all such material.  (Dkt. 91-2, Mem. in Supp. of Pl.'s Mot. to Compel, generally.)  Concurrently with this filing, the Defendant is producing to Z Street all non-privileged documents showing how the Service processed Z Street's application after Z Street filed suit, once again waiving any claim of deliberative process privilege.  To the extent that Z Street has any continuing, cognizable interest in knowing that it received an untainted process and disclosure of that process, the Defendant submits that these productions satisfy that interest.  *Cf. Bowen v. Cheuvront*, 516 F. Supp.2d 1021, 1026-27 (D. Neb. 2007), *vacated on other grounds by,* 521 F.3d 860 (8th Cir. 2008) (court has discretion to decline to grant equitable relief to a plaintiff who is otherwise entitled to it); *Overby v. National Ass'n of Letter Carriers*, 595 F.3d 1290 (D.C. Cir. 2010) (recognizing the difficulty of "proving the negative" and affirming lower court where the absence of an act was established based on circumstantial evidence).

**D.**     **Z Street's contention that its claims are not moot under *True the Vote* is incorrect as a matter of fact and of law**

Z Street contends that the D.C. Circuit's recent decision in *True the Vote* shows that this case is not moot and should continue.  (Pl.'s Mem. 6-7, 10-12.)  In fact, the decision shows the opposite.

In *True the Vote*, multiple organizations filed suit, alleging that "the IRS selected out" their applications for recognition of exempt status "for more rigorous review on the basis of their names, which were in each instance indicative of a conservative or anti-Administration orientation."  831 F.3d at 555.  The plaintiffs further alleged that they were, based on their viewpoints, subjected to "harassing and unconstitutional questions and requests for information" in violation of the First Amendment.  *Id.* at 556.  In support of their claims, the plaintiffs either quoted a 2013 report issued by TIGTA or attached copies of the report to their complaints, and alleged that they were being subjected to the precise conduct described therein.  *True the Vote, Inc. v. Internal Revenue Serv.*, 71 F. Supp.3d 219, 223-24 (D.D.C. 2014); *Linchpins of Liberty v. United States*, 71 F. Supp.3d 236, 239-41 (D.D.C. 2014).  The plaintiffs sought, *inter alia*, declaratory and injunctive relief.  *True the Vote*, 831 F.3d at 555.

The district court found that the plaintiffs' claims for declaratory and injunctive relief were moot because, in response to the TIGTA report, the Service had taken steps to ensure that the conduct described in the report did not occur in the future.  *Id.*  On appeal, the D.C. Circuit disagreed that the Service's voluntary compliance with the recommendations in the TIGTA report was sufficient to render the litigation moot.  *Id.* at 561-64.  Specifically, the D.C. Circuit was concerned that a number of the plaintiffs' applications remained pending.  *Id.* at 561-63.  This fact was central to the D.C. Circuit's analysis because the continued existence of pending applications meant that any improper criteria could still be applied to those plaintiffs'

applications *if* either: (a) such criteria had not actually been abandoned; or (b) the Service began

using such criteria notwithstanding its prior compliance with the TIGTA recommendations. *Id.*

(expressing concern that the Service had "suspended," rather than discontinued, certain

practices).[9]  The Court declined to consider additional evidence of voluntary cessation,

suggesting it could be offered as evidence on remand. *Id.* at 562.  As a result, the D.C. Circuit

reversed the district court's order dismissing the plaintiffs' claims for declaratory and injunctive

relief and remanded those claims for further proceedings. *Id.* at 564.

　　　In evaluating whether the plaintiffs' claims were moot, the D.C. Circuit made clear that

without conduct to be enjoined, there is no case or controversy and jurisdiction "expires" under

Article III. *Id.,* 831 F.3d at 558, 561.  "Even where a case once posed 'a live controversy when

filed, the [mootness] doctrine requires' the Court 'to refrain from deciding it if events have so

transpired  that the decision will neither presently affect the parties rights nor have a more-than-

speculative chance of affecting them in the future." *Id.* at 558 (quoting *Linchpins of Liberty,* 71

F. Supp.3d 236; *Clarke v. United States,* 915 F.2d 699, 701 (D.C. Cir. 1990)).  But the D.C.

Circuit was concerned that not all the plaintiffs' applications had been processed, and that—

absent evidence that the Service had permanently discontinued the conduct that gave rise to the

litigation—those plaintiffs with pending applications might be subject to the disputed practices.

*Id.* at 561.  When a defendant has temporarily ceased the controversial conduct, but remains

---

[9] Notably, in moving to dismiss, the United States' mootness argument was confined to those organizations whose applications for tax-exempt status had already been granted, and not organizations whose applications remained pending.  Because of that procedural posture, the appellate record lacked evidence submitted by the United States in support of mootness, such as the 2015 TIGTA Report and IRS declaration, both of which have since been filed with the United States' pending summary judgment motion in that case. *Linchpins of Liberty et al. v. United States,* No. 13-cv-777-RBW, Nov. 11, 2016, ECF No. 113, pp.13-14 n. 9.

"'free to return to [its] old ways—thereby subjecting the plaintiff to the same harm but, at the same time, avoiding judicial review,'" mootness may not be a jurisdictional bar. *Id.* (quoting *Qassim v. Bush,* 466 F.3d 1073, 1075 (D.C. Cir. 2006)) (citations omitted).  To establish voluntary cessation, a defendant "must show that '(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  *Id. (*quoting *Qassim* at 1075).

Had all the plaintiffs' pending applications been acted upon, the D.C. Circuit likely would not have had such concerns, as there would have been no applications against which to apply the disputed conduct, making those claims moot.  This would be in accordance with longstanding D.C. Circuit precedent requiring that the plaintiff in a case be subject to an ongoing or imminent injury to obtain equitable relief, rather than asserting an ongoing or imminent injury on behalf of other litigants not before the court.  *Compare Qassim v. Bush,* 466 F.3d at 1074-78 (release of Guantanamo detainees rendered their challenge to the Government's detention policy moot, notwithstanding that the Government continued to detain other prisoners at Guantanamo pursuant to that policy; the released detainees had no ongoing or imminent injury under a policy to which they were no longer subject) *with Ukrainian-Am. Bar Assoc., Inc. v. Baker*, 893 F.2d 1374, 1376-80 (D.C. Cir. 1990) (bar association's challenge to the Government's policy of denying asylum seekers access to the association's lawyers was not rendered moot by a particular merchant seaman's decision to discontinue his pursuit of asylum; the association had an ongoing and imminent injury stemming from being deprived of access to other asylum seekers under the policy).

Here, Z Street's claims are moot because its application is no longer pending, and there are no other plaintiffs with pending applications.  As such, the question of voluntary cessation is

irrelevant.  Without a pending application, it is impossible for the alleged Israel Special Policy to "presently affect [Z Street's] rights nor have a more-than-speculative chance of affecting [it] in the future." *True the Vote*, 831 F.3d at 558.  In order for Z Street to potentially be subject to the alleged policy in the future, it would need to have its status revoked, unsuccessfully challenge that revocation, and reapply for the status it lost, etc.  Z Street itself makes no such argument, and the chances of this happening are clearly attenuated and remote.

Accordingly, Z Street cannot obtain declaratory or injunctive relief, and the case is moot.

## III.  Z Street's remaining arguments are unavailing

In an effort to persuade the Court that this action is not moot, Z Street raises four additional arguments that are not sufficient to establish that a live controversy continues to exist.  (Pl.'s Mem. 3, 5-6, 8-14.)  First, Z Street argues that this action is not moot because, in the Defendant's response to Z Street's prior motion to compel, the Defendant contended that it was inappropriate for the Court to take judicial notice of certain findings in a 2013 report issued by TIGTA.  (*Id.* at 5-6, 11-12.)  Second, Z Street argues that this action is not moot until, "at a bare minimum," it obtains all the court-ordered declaratory and injunctive relief sought in its Amended Complaint.  (*Id.* at 3, 8-10.)  Third, Z Street argues that this action is not moot because it has not been awarded nominal damages, which Z Street claims for the first time are encompassed in its Amended Complaint's request for "[s]uch other and further relief as the Court may deem proper."  (*Id.* at 3, 8-9, 12-14.)  Fourth, Z Street argues that this action is not moot because it has not been awarded its attorney's fees and costs.  (*Id.* at 3, 8-9, 12, 14.)  These arguments are without merit and cannot resuscitate this now moot litigation.

### A.  The TIGTA report is irrelevant to whether this action is moot

In prior briefing, Z Street requested that the Court take judicial notice of a 2013 TIGTA report addressing claims that the Service asked improper questions of organizations whose

applications contained indicators of significant amounts of political campaign intervention.
(Dkt. 91-2, Mem. in Supp. of Pl.'s Mot. to Compel, 3 n.1.)  The Defendant opposed that request,
arguing that the report was irrelevant because it concerned different facts, largely concerned a
time frame not at issue in this action, and was partially disputed by the Service when it was
issued.  (Dkt. 96, Def.'s Opp'n 8-9.)  Z Street latches onto the fact that the Service partially
disputed the report's findings three years ago—even though that dispute appears on the face of
the report on which Z Street seeks to rely and was limited to its factual characterizations, rather
than the recommendations—and then claims that this action cannot be moot unless the
Government admits that it engaged in the conduct described in the TIGTA report and then
affirmatively abandons it.  (Pl.'s Mem. 5-6, 11-12.)  This argument is a red herring.

*First*, as the Defendant explained in its response to Z Street's motion to compel, the
report is irrelevant here because it addressed a fundamentally different set of facts—
1) organizations with indicia of significant amounts of political campaign intervention 2) which
were identified for additional development and as a result asked questions that the report
concluded were ultimately unnecessary to determining whether they were entitled to recognition
of tax-exempt status, and  3) where the investigation did not specifically address purported
constitutional violations.  (Dkt. 96, Def.'s Opp'n 8-9.)

*Second*, as discussed in Sections I. and II., *supra*, this action is moot because Z Street was
never subjected to the allegedly unconstitutional conduct described in its Amended Complaint
and, now that its application has been granted, is unlikely to have such conduct applied to it in
the immediate future.  Moreover, this action is moot because Z Street cannot demonstrate either
an ongoing or imminent violation of its rights, as is necessary to establish a present controversy

in an action requesting injunctive or declaratory relief.  Whether or not the Defendant has

acquiesced to certain findings in the report is irrelevant to this mootness analysis.

*Third*, Z Street argues that the Defendant's position with respect to the report in this

action is inconsistent with the Government's position in *True the Vote* and *Linchpins of Liberty*.

(Pl.'s Mem. 5-6.)  Although any such inconsistency would be irrelevant, there is none.   In both

*True the Vote* and *Linchpins*, the plaintiffs either quoted the report in, or attached copies of the

report to, their complaints and alleged that they were being subjected to the precise conduct

described therein; the district court, therefore, considered the report in deciding whether it was

appropriate to dismiss the complaints.  *True the Vote, Inc.*, 71 F. Supp.3d at 223-24; *Linchpins of*

*Liberty*, 71 F. Supp.3d at 239-41.  As readily appears from the face of the report, the Service

disagreed with some of the factual characterizations in the report, but agreed with (and has since

addressed) all the recommendations presented therein.  (Dkt. 91-2, Mem. in Supp. of Pl.'s Mot.

to Compel, Ex. A 46-48.)

## B.    Mootness is not dependent on whether Z Street has received all the relief it sought

Z Street claims that it has not received all the equitable relief sought in its prayer for

relief and that this precludes this action from becoming moot.  (Pl.'s Mem. 3, 8-10.)  Z Street is

wrong.  As discussed in Sections I. and II., *supra*, the relevant question is whether there is a live

controversy, not whether Z Street got everything it sought in its prayer for relief. Furthermore,

the Defendant offered Z Street some of this relief, namely an injunction stopping the Service

from processing its application in a particular manner and requiring that it be processed in a

different manner, but Z Street declined.  (J. Report and Disc. Plan at 3, 12/17/2015 Status Conf.

Tr. 2:8-4:2, 4:5-16.)  Having done so, Z Street cannot now credibly contend that it has been

deprived of the opportunity to obtain such relief.

## C.  Z Street cannot avoid dismissal by asserting an unpled, futile claim for nominal damages

In a transparent attempt to salvage an otherwise moot claim, Z Street asserts for the first time that it is entitled not only to equitable relief, but also to nominal damages.  (Pl.'s Mem. 3, 8-9, 12-14.)  This request for nominal damages is precluded by Z Street's failure to timely assert such a claim, as well as the doctrine of sovereign immunity.

Initially, Z Street failed to raise a claim for damages—nominal or otherwise—in its Complaint, Amended Complaint, or any filing made with this Court or the D.C. Circuit to date. This fact, standing alone, is sufficient to preclude Z Street from making such a claim now.  *Davis v. D.C.*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (affirming district court's *sua sponte* dismissal of the plaintiff's complaint for compensatory and punitive damages; while the court could have hypothetically awarded nominal damages, it was not required to "strain[ ] to find inferences that are not available on the face of the complaint or in the briefs submitted to this court"); *Matthews v. D.C.*, 675 F. Supp.2d 180, 188 (D.D.C. 2009) (declining to consider claim for nominal damages when "the plaintiffs do not even request nominal damages in their complaint").

While Z Street points to a generic paragraph in its prayer for relief seeking "[s]uch other and further relief as the Court may deem proper" (Pl.'s Mem. 12 n.2), this hardly demonstrates an intent to seek monetary relief; this paragraph is, in fact, listed under the heading of injunctive relief.  (Am. Compl., Prayer for Relief ¶ E.)  And while the Ninth Circuit has held that a generic prayer for relief may be sufficient to plead a request for nominal damages, *Yniguez v. State*, 975 F.2d 646, 647 n.1 (9th Cir. 1992), Z Street has not identified any case in this district that has adopted the Ninth Circuit's approach.  *See Aref v. Holder*, 953 F. Supp.2d 133, 149 (D.D.C. 2013) (citing *Yniguez* but declining to apply it to the First and Fifth Amendment claims at issue) (additional citations omitted).  Moreover, Z Street has repeatedly and strenuously emphasized

that it is seeking only equitable relief and "does not seek money damages from anyone—not

from the United States, or the IRS, or from any agent personally in a *Bivens* action." (Dkt. 5,

Opp'n 9; *see also* Dkt. 21, Opp'n 2, 8; *Z Street v. Koskinen*, No. 15-5010 (D.C. Cir.), Mar. 20,

2015 Appellee Br. at 18.) This Court and the D.C. Circuit relied on these representations in

denying the Defendant's motion to dismiss. *Z Street*, 44 F. Supp.3d at 62-65, *aff'd*, 791 F.3d at

32. For Z Street to now make a dramatic about-face and belatedly assert an unpled claim for

nominal damages is as disingenuous as it is ineffective. *See Arizonans for Official English v.

Arizona*, 520 U.S. 43, 71 (1997) ("it should have been clear . . . that a claim for nominal

damages, extracted late in the day from [plaintiff]'s general prayer for relief and asserted solely

to avoid otherwise certain mootness, bore close inspection").

Finally, Z Street cannot avoid dismissal by seeking nominal damages because the

doctrine of sovereign immunity bars any claim for damages. It is black letter law that the United

States and its agencies are immune from suit in all civil actions. *Dep't of the Army v. Blue Fox,

Inc.*, 525 U.S. 255, 260 (1999) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)). Only a

statute enacted by Congress can waive this immunity; the waiver must be explicit; and courts

must strictly construe any such waiver in favor of the United States. *Blue Fox*, 525 U.S. at 261;

*Lane v. Pena*, 518 U.S. 187, 192 (1996). The doctrine of sovereign immunity is jurisdictional,

operating as a complete bar to lawsuits against the Government absent an explicit waiver.

*United States v. Sherwood*, 312 U.S. 584, 586 (1941).

This Court and the D.C. Circuit agreed with Z Street that this action falls within the

waiver of sovereign immunity contained in Section 702 of the Administrative Procedure Act.

*Z Street*, 44 F. Supp.3d at 62-65, *aff'd*, 791 F.3d at 32. However, the plain language of Section

702 waives sovereign immunity only for claims "seeking relief other than monetary damages."

27

5 U.S.C. § 702.  It is well-established that the United States has not waived sovereign immunity

for claims seeking monetary damages arising from the violation of a plaintiff's constitutional

rights.  *Hubbard v. Adm'r, E.P.A.*, 982 F.2d 531, 531-39 (D.C. Cir. 1992); *Benoit v. U.S. Dep't

of Agric.*, 577 F. Supp.2d 12, 26 (D.D.C. 2008), *aff'd*, 608 F.3d 17 (D.C. Cir. 2010); *Fletcher v.

U.S. Dep't of Justice*, 17 F. Supp.3d 89, 93 (D.D.C. 2014).  Z Street's cited authority is

inapposite, as it involves claims where sovereign immunity presented no obstacle to suit.  *See

Carey v. Piphus*, 435 U.S. 247 (1978) (28 U.S.C. § 1983 action against school board members in

their individual capacities); *Davis,* 158 F.3d at 1345 (§ 1983 action against the District of

Columbia and a prison official in his individual capacity); *Hobson v. Wilson*, 737 F.2d 1, 63

(D.C. Cir. 1984) (§ 1985 action against the District of Columbia and police officers and Federal

Bureau of Investigation employees in their individual capacities); *Elkins v. District of Columbia*,

610 F. Supp.2d 52, 63 (D.D.C. 2009) (§ 1983 action against District of Columbia and city

employees in their individual capacities).

> **D.     An outstanding claim for attorney's fees and costs is insufficient to
>          preclude an action from becoming moot**

Without citing any authority, Z Street asserts that this action is not moot because it may

still seek to recover its attorney's fees and costs.  This assertion ignores the bright line rule that

attorney's fees and costs are ancillary to consideration of the merits of the case and, therefore,

should only be addressed after judgment has been entered.

A party that prevails in a suit against the Government may seek to recover its attorney's

fees and costs under Fed. R. Civ. P. 54 and 28 U.S.C. § 2412.  However, any discussion of

attorney's fees and costs is premature until judgment is entered.  *See* Fed. R. Civ. P.

54(d)(2)(B)(i); LCvR 54.1, 54.2; 28 U.S.C. 2412(d)(1)(B); *see also Castro Cty., Tex. v. Crespin*,

101 F.3d 121, 126 (D.C. Cir. 1996) ("no determination about a party's entitlement can be made

until the underlying case on the merits has been resolved, after which time the parties may raise

the independent issue of attorneys' fees"); *Cobell v. Norton*, 319 F. Supp.2d 36, 41 (D.D.C.

2004) (plaintiff's request for an award of fees and expenses was premature where no final

judgment had been entered).

Moreover, the D.C. Circuit has held that the award or denial of attorney's fees under a

fee-shifting statute "is an ancillary question to the main subject matter of the litigation." *Castro*,

101 F. 3d at 126 (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988)) ("a

claim for attorney's fees is not part of the merits of the action to which the fees pertain").  A

plaintiff simply cannot claim a live case or controversy in an otherwise moot case by saying that

it may be entitled to a post-judgment award of fees and costs.  *Lewis v. Cont'l Bank Corp.*, 494

U.S. 472, 480 (1990)) ("An interest in attorney's fees is . . . insufficient to create an Article III

case or controversy where none exists on the merits of the underlying claims.").

## IV. In the alternative, the Court should enter a scheduling order providing that the parties conclude discovery in no more than 90 days

The parties conducted a conference under Fed. R. Civ. P. 26(f) on August 25, 2015.  (J.

Report and Disc. Plan 1.)  Discovery has been open on a continuous basis for approximately 460

days since that conference, including approximately 350 days of discovery following the initial

scheduling conference held on December 17, 2015.  The Defendant has now spent thousands of

hours responding to discovery propounded by Z Street.  (*See* Dkt. 83, Mot. to Extend Time ¶ 8

(stating that, as of February 2016, the Service had spent over 2,000 hours responding to Z

Street's discovery requests).)

This Court's guidelines provide for 60 days of discovery following the initial scheduling

conference in expedited cases, 120 days in standard cases, and 180 days in complex cases.  (Dkt.

81, Order 3.)  If the Court does not dismiss Z Street's Complaint, it should enter a scheduling

order providing that the parties conclude discovery in no more than 90 days.

## CONCLUSION

Based on the foregoing, Z Street's Amended Complaint should be dismissed as moot.

Dated: November 30, 2016

Respectfully submitted,

/s/ Kari M. Larson
KARI M. LARSON
Senior Litigation Counsel
OLGA L. TOBIN
GEOFFREY J. KLIMAS
Trial Attorneys
Tax Division
U.S. Department of Justice
Post Office Box 227
Telephone:  (202) 616-3822
                   (202) 307-6322
                   (202) 307-6346
Fax: (202) 514-6866
Email: Kari.M.Larson@usdoj.gov
         Olga.L.Tobin@usdoj.gov
         Geoffrey.J.Klimas@usdoj.gov
*Attorneys for the Defendant*

**CERTIFICATE OF SERVICE**

I certify that on November 30, 2016, I filed the foregoing DEFENDANT'S RESPONSE

TO PLAINTIFF'S BRIEF REGARDING MOOTNESS, DECLARTION OF JEFFREY I.

COOPER WITH EXHIBITS, and DECLARATION OF GEOFFREY J. KLIMAS WITH

EXHIBITS with the Clerk of Court using the CM/ECF system, which will send notice of this

filing to all parties registered to receive such notice, including Plaintiff's counsel.


/s/ Kari M. Larson
KARI M. LARSON